## MINNEAPOLIS AND ST. LOUIS RAILWAY COMPANY *v.* BECKWITH.

### ERROR TO THE CIRCUIT COURT OF KOSSUTH COUNTY, STATE OF IOWA.

No. 100. Argued December 3, 1888. — Decided January 7, 1889.

The provision in the Code of Iowa, § 1289, which authorizes the recovery of "double the value of the stock killed or damages caused thereto" by a railroad, when the injury took place at a point on the road where the corporation had a right to erect a fence and failed to do so, and when it was not "occasioned by the wilful act of the owner or his agent," is not in conflict with the Fourteenth Amendment to the Constitution of the United States, either as depriving the company of property without due process of law, or as denying to it the equal protection of the laws.

Corporations are persons within the meaning of the clauses in the Fourteenth Amendment to the Constitution concerning the deprivation of property, and concerning the equal protection of the laws. *Santa Clara County* v. *Southern Pacific Railroad,* 118 U. S. 394, and *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S. 181, followed.

The Fourteenth Amendment to the Constitution does not limit the subjects in relation to which the police power of the State may be exercised for the protection of its citizens. *Barbier* v. *Connolly,* 113 U. S. 27, *Soon*

*Hing* v. *Crowley*, 113 U. S. 703, and *Missouri Pacific Railway* v. *Humes*, 115 U. S. 512, considered and followed.
The propriety and legality of the imposition of punitive damages for a violation of duty have been recognized by repeated judicial decisions for more than a century.

THE case is stated in the opinion of the court.

*Mr. Eppa Hunton* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

This case comes before us from the Circuit Court of Kossuth County, Iowa, the highest court of that state in which the controversy between the parties could be determined. Rev. Stat. § 709. It was an action for the value of three hogs, run over and killed by the engine and cars of the Minneapolis and St. Louis Railway Company, a corporation existing under the laws of Minnesota and Iowa, and operating a railroad in the latter state. The killing was at a point where the defendant had the right to fence its road. The action was brought before a justice of the peace of Kossuth County. Proof having been made of the killing of the animals and of their value, and that notice of the fact, with affidavit of the injury, had been served upon an officer of the company in the county where the injury was committed, more than thirty days before the commencement of the action, the justice gave judgment for the plaintiff against the company for twenty-four dollars, double the proved value of the animals. The case was then removed to the Circuit Court of Kossuth County, where the judgment was affirmed. To review this latter judgment the case is brought here on writ of error.

The judgment rendered by the justice was authorized by § 1289 of the Code of Iowa, which is as follows:

"Any corporation operating a railway that fails to fence the same against live stock running at large at all points where such right to fence exists shall be liable to the owner of any such stock injured or killed by reason of the want of such fence

for the value of the property or damage caused, unless the same was occasioned by the wilful act of the owner or his agent. And in order to recover it shall only be necessary for the owner to prove the injury or destruction of his property; and if such corporation neglects to pay the value of or damage done to such stock within thirty days after notice in writing, accompanied by an affidavit of such injury or destruction, has been served on any officer, station or ticket-agent employed in the management of the business of the corporation in the county where the injury complained of was committed, such owner shall be entitled to recover double the value of the stock killed or damages caused thereto."

The validity of this law was assailed in the state court, and is assailed here, as being in conflict with the first section of the Fourteenth Amendment of the Constitution of the United States, in that it deprives the railway company of property without due process of law, so far as it allows a recovery of double the value of the animals killed by its trains; and in that it denies to the company the equal protection of the laws by subjecting it to a different liability for injuries committed by it from that to which all other persons are subjected.

It is contended by counsel as the basis of his argument, and we admit the soundness of his position, that corporations are persons within the meaning of the clause in question. It was so held in *Santa Clara County* v. *Southern Pacific Railroad Co.*, 118 U. S. 394, 396, and the doctrine was reasserted in *Pembina Mining Company* v. *Pennsylvania*, 125 U. S. 181, 189. We admit also, as contended by him, that corporations can invoke the benefits of provisions of the Constitution and laws which guarantee to persons the enjoyment of property, or afford to them the means for its protection, or prohibit legislation injuriously affecting it.

We will consider the objections of the railway company in the reverse order in which they are stated by counsel. And first, as to the alleged conflict of the law of Iowa with the clause of the Fourteenth Amendment ordaining that no state shall deny to any person within its jurisdiction the equal protection of the laws. That clause does undoubtedly prohibit

discriminating and partial legislation by any State in favor of particular persons as against others in like condition. Equality of protection implies not merely equal accessibility to the courts for the prevention or redress of wrongs and the enforcement of rights, but equal exemption with others in like condition from charges and liabilities of every kind. But the clause does not limit, nor was it designed to limit, the subjects upon which the police power of the State may be exerted. The State can now, as before, prescribe regulations for the health, good order and safety of society, and adopt such measures as will advance its interests and prosperity. And to accomplish this end special legislation must be resorted to in numerous cases, providing against accidents, disease and danger, in the varied forms in which they may come. The nature and extent of such legislation will necessarily depend upon the judgment of the legislature as to the security needed by society. When the calling, profession or business of parties is unattended with danger to others, little legislation will be necessary respecting it. Thus, in the purchase and sale of most articles of general use, persons may be left to exercise their own good sense and judgment; but when the calling or profession or business is attended with danger, or requires a certain degree of scientific knowledge upon which others must rely, then legislation properly steps in to impose conditions upon its exercise. Thus, if one is engaged in the manufacture or sale of explosive or inflammable articles, or in the preparation or sale of medicinal drugs, legislation, for the security of society, may prescribe the terms on which he will be permitted to carry on the business, and the liabilities he will incur from neglect of them. The concluding clause of the first section of the Fourteenth Amendment simply requires that such legislation shall treat alike all persons brought under subjection to it. The equal protection of the law is afforded when this is accomplished. Such has been the ruling of this court in numerous instances where that clause has been invoked against legislation supposed to be in conflict with it. Thus in *Barbier* v. *Connolly*, 113 U. S. 27, 32, it was objected that a municipal ordinance of San Francisco, prohibiting washing and ironing

in public laundries, within certain designated limits of the city between the hours of ten at night and six in the morning, was in conflict with that amendment, in that it discriminated between laborers engaged in the laundry business and those engaged in other kinds of business, and between laborers employed within the designated limits and those without them. But the court held that the provision was merely a police regulation; that it might be a necessary measure of protection in a city composed largely of wooden buildings like San Francisco, that occupations in which fires are constantly required should cease during certain hours at night, and of the necessity of such a regulation that municipal body was the exclusive judge; that the same authority which directs the cessation of labor must necessarily prescribe the limits within which it shall be enforced, as it does the limits within which wooden buildings must not be constructed; and that restrictions of this kind, though necessarily special in character, do not furnish ground of complaint if they operate alike upon all persons or property under the same circumstances and conditions. "Class legislation," said the court, "discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

In *Soon Hing* v. *Crowley*, 113 U. S. 703, 709, an objection was taken to a similar ordinance of San Francisco, that it made an unwarrantable discrimination against persons engaged in the laundry business, because persons in other kinds of business were not required to cease from labor during the same hours at night. But, the court said, there may be no risks attending the business of others, certainly not as great as where fires are constantly required; and that specific regulations for one kind of business, which may be necessary for the protection of the public, can never be the just ground of complaint, because like restrictions are not imposed upon business of a different kind. "The discriminations, which are open to objection," the court added, "are those where persons engaged in the same business are subjected to different restric-

tions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the law."

In *The Missouri Pacific Railway Company* v. *Humes*, 115 U. S. 512, 523, a statute of Missouri requiring every railroad corporation within it to erect and maintain fences and cattle guards on the sides of its roads, where the same passed through, along, or adjoining inclosed or cultivated fields, or uninclosed lands, and, if it did not, making it liable in double the amount of damages to animals, caused thereby, was assailed as in conflict with the Fourteenth Amendment, on the same grounds urged in the present case; namely, that it deprived the defendant of property without due process of law, so far as it allowed a recovery of damages for stock killed or injured in excess of its value, and also that it denied to the defendant the equal protection of the laws, by imposing upon it a liability for injuries committed which was not imposed upon other persons. But the court said that authority for requiring railroads to erect fences on the sides of their roads, so as to keep horses, cattle and other animals from going upon them, was found in the general police power of the State to provide against accidents to life and property in any business or employment, whether under the charge of private persons or of corporations; that in few instances could that power be more wisely or beneficently exercised than in compelling railroad corporations to inclose their roads with fences having gates at crossings, and cattle guards; that they are absolutely essential to give protection against accidents in thickly settled portions of the country; that the omission to erect and maintain them, in the face of the law, would justly be deemed gross negligence, and that if injuries to property are committed something beyond compensatory damages might be awarded in punishment of it. Referring to the rule which prevails of allowing juries to assess exemplary or punitive damages where injuries have resulted from neglect of duties, the court said: "The statutes of nearly every State of the Union provide for the increase of damages where the injury complained of results

from the neglect of duties imposed for the better security of life and property, and make that increase in many cases double, in some cases treble, and even quadruple the actual damages. And experience favors this legislation as the most efficient mode of preventing, with the least inconvenience, the commission of injuries. The decisions of the highest courts have affirmed the validity of such legislation. The injury actually received is often so small that in many cases no effort would be made by the sufferer to obtain redress, if the private interest were not supported by the imposition of punitive damages." And as to the objection that the statute of Missouri denied to the defendant the equal protection of the laws, the court said that it made no discrimination against any railroad company in its requirement; that each company was subject to the same liabilities, and from each the same security was exacted by the erection of fences, gates and cattle guards, when its road passed through, along, or adjoining inclosed or cultivated fields or uninclosed lands; and that there was no evasion of the rule of equality where all companies are subjected to the same duties and liabilities under similar circumstances.

In *Missouri Pacific Railway Co.* v. *Mackey*, 127 U. S. 205, a statute of Kansas providing that "every railroad company organized or doing business in this State shall be liable for all damages done to any employé of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employés, to any person sustaining such damage," was assailed on the ground that it was in conflict with the Fourteenth Amendment to the Constitution in that it deprived the company of its property without due process of law, and denied to it the equal protection of the laws. In support of the first position the company referred to the rule of law that prevailed previously in Kansas and some other States, exempting from liability an employer for injuries to employés caused by the incompetency or negligence of a fellow-servant, and contended that the law of Kansas in creating on the part of the railroad company a liability in such cases not previously existing, in the enforcement of which

their property might be taken, authorized the taking of property without due process of law, and imposed a special liability upon railway companies that was not imposed upon other persons, and thus denied to the former the equal protection of the laws. But the court answered that the law in question applied only to injuries subsequently committed, and that it would not be contended that the State could not prescribe the liabilities under which corporations created by its laws should conduct their business in the future, where no limitation was placed upon its power in that respect by their charters; that whatever hardship or injustice there might be in any law thus applicable to the future must be remedied by legislative enactment; that the objection, that the railroad company was denied the equal protection of the laws, rested upon the theory that legislation special in its character was within the constitutional inhibition, but that so far from such being the fact the greater part of all legislation was special, either in the objects sought to be attained by it, or in the extent of its application; that when such legislation applied to particular bodies or associations, imposing upon them additional liabilities, it was not open to the objection that it denied to them the equal protection of the laws, if all persons brought under its influence were treated alike under the same conditions; that the hazardous character of the business of operating a railway called for special legislation with respect to railroad corporations, having for its object the protection of their employés as well as the safety of the public, which was not required by the business of other corporations not subject to similar dangers to their employés; and that the legislation in question met a particular necessity, and all railroad corporations without distinction were subject to the same liabilities.

From these adjudications it is evident that the Fourteenth Amendment does not limit the subjects in relation to which the police power of the State may be exercised for the protection of its citizens. That this power should be applied to railroad companies is reasonable and just. The tremendous force brought into action in running railway cars renders it absolutely essential that every precaution should be taken against

accident by collision, not only with other trains, but with animals. A collision with animals may be attended with more serious injury than their destruction; it may derail the cars and cause the death or serious injury of passengers. Where these companies have the right to fence in their tracks, and thus secure their roads from cattle going upon them, it would seem to be a wise precaution on their part to put up such guards against accidents at places where cattle are allowed to roam at large. The statute of Iowa, in fixing an absolute liability upon them for injuries to cattle committed in the operation of their roads by reason of the want of such guards, would seem to treat this precaution as a duty. It is true that, by the common law, the owner of land was not compelled to inclose it, so as to prevent the cattle of others from coming upon it, and it may be that, in the absence of legislation on the subject, a railway corporation is not required to fence its railway, the common law as to inclosing one's land having been established long before railways were known. But the obligation of the defendant railway company to use reasonable means to keep its track clear, so as to insure safety in the movement of its trains, is plainly implied by the statute of Iowa, which also indicates that the putting up of fences would be such reasonable means of safety. If, therefore, the company omits those means, the omission may well be regarded as evidence of such culpable negligence as to justify punitive damages where injury is committed; and if punitive damages in such cases may be given, the legislature may prescribe the extent to which juries may go in awarding them.

The law of Iowa under consideration is less open to objection than that of Missouri, which was sustained in the case cited above. There double damages could be claimed by the owner whenever his cattle had strayed upon the track of the railway company for want of fences on its sides, and had been killed or injured by the railway trains. Here such damages can be claimed for like injuries to cattle only where the company has received notice and affidavit of the injury committed thirty days before the commencement of the action, and has persisted in refusing to pay for the value of the property

destroyed or the damage caused. There must be not merely negligence of the company in not providing guards against accidents of the kind, but also its refusal to respond for the actual damage suffered. Without the additional amount allowed there would be few instances of prosecutions of railroad companies where the value of the animals killed, or injured by them is small, as in this case; the cost of the proceeding would only augment the loss of the injured party. As said in the Missouri case cited: "The injury actually received is often so small that in many cases no effort would be made by the sufferer to obtain redress, if the private interest were not supported by the imposition of punitive damages." 115 U. S. 523.

The legislation in question has been sustained in numerous instances by the Supreme Court of Iowa. In *Welsh* v. *Chicago, Burlington and Quincy Railroad Co.*, 53 Iowa, 632, 634, which was an action to recover double the value of a horse alleged to have been killed by one of the defendant's engines at a point where it had the right to fence the road, the court below instructed the jury that it was the duty of the company to fence its road against live stock running at large at all points where such right to fence existed; and it was objected to this instruction that no such duty existed; upon which the Supreme Court of the State, to which the case was taken, said: "While it is true the statute does not impose an abstract duty or obligation upon railway companies to fence their roads, yet as to live stock running at large a failure to fence fixes an absolute liability for injuries occurring in the operation of the road by reason of the want of such fence. The corporation owes a duty to the owners of live stock running at large either to fence its road or to pay for injuries resulting from the neglect to fence." And in *Bennett* v. *The Wabash, St. Louis and Pacific Railway Co.*, 61 Iowa, 355, 356, the same court said: "We think the only proper construction of the statute is, that in order to escape liability the company must not only fence, but keep the road sufficiently fenced; and this has been more than once ruled." As it is thus the duty of the railway company to keep its track free from animals, its

neglect to do so by adopting the most reasonable means for that purpose, the fencing of its roadway as indicated by the statute of Iowa, justly subjects it, as already stated, to punitive damages, where injuries are committed by reason of such neglect. The imposition of punitive or exemplary damages in such cases cannot be opposed as in conflict with the prohibition against the deprivation of property without due process of law. It is only one mode of imposing a penalty for the violation of duty, and its propriety and legality have been recognized, as stated in *Day* v. *Woodworth*, 13 How. 363, 371, by repeated judicial decisions for more than a century. Its authorization by the law in question to the extent of doubling the value of the property destroyed, or of the damage caused, upon refusal of the railway company, for thirty days after notice of the injury committed, to pay the actual value of the property or actual damage, cannot therefore be justly assailed as infringing upon the Fourteenth Amendment of the Constitution of the United States.

*Judgment affirmed.*