The opinion of the court was delivered by
Eenner, J.
Defendant appeals from a conviction and sentence on a charge of violating a city ordinance containing the following provisions:
1. “ That it is hereby made unlawful to excavate or sink a well on any premises used as a bakery or bakeshop within the city limits.
2. “ That upon any such premises where a well now exists, it shall be the duty of the owner of the property to cause same to be immediately filled up to the surface of the ground.”
Defendant admits that he owns premises which he uses as a bakery, and that he has thereon a well eighteen feet deep, the water of which he uses in making up the bread which he sells to his customers ; that he had been duly notified by the proper authority to fill the well and had refused to do so.
The sole issue is as to the legality and constitutionality of the ordinance, which he assails cn two grounds: first, that it operates a taking of property without due process of law and without adequate compensation, in violation of the Constitutions of the State and of the United States; second, that it is class legislation, discriminating, without reason, against a particular class of citizens.
I.
The proposed suppression of the well on defendant’s premises is not an exercise of the right of eminent domain by taking private property for public use without just compensation or due process of law within the purview of the constitutional provisions above referred to. It is a distinct exercise of the police power, as to which *1168 we have heretofore said: “It is ■universally admitted that, however broadly these principles may be expressed, there exists, ex necessitate rei, in every government, the power to impose restrictions upon individual rights of life, liberty and property, which it is not within the meaning or intent of such provisions to prohibit or restrain. * * * So universal and long-continued has been this construction of constitutional inhibitions against governmental deprivation of life, liberty and property of citizens, that it may now be considered as written into ever Constitution.” State ex rel. Walker vs. Judge, 39 An. 138.
If, then, the ordinance under consideration is a proper and lawful exercise of the police power, the constitutional inhibitions invoked have no application thereto; if it is not such an exercise of that power, there is no other ground on which it can stand for a moment.
The Legislature has delegated to the city of New Orleans very extensive police powers, as appears from the following section of the charter, Act 20 of 1882:
“ Sac. Y. The Council shall have power, and it shall be their duty, to pass such ordinances and to see to their faithful execution as may be necessary and proper: * * * (2) To maintain its (the city's) cleanliness and health and to this end: * * * (b) provide for the inspection and cleanliness of all vaults, privies, yards, markets, cemeteries; (c) to regulate the location of and inspection and cleaning of dairies, stables, cattle yards, landings and pens, slaughter houses, soap, glue, tallow and leather factories, depositories for hides, and all places or business likely to be or become detrimental to health, and adopt such ordinances and regulations as shall be' necessary or expedient for the protection of health and to prevent the spread of disease, and to maintain a good sanitary condition in the streets, public places and buildings and on all private premises. * * * (d) To suppress all nuisances; (e) to prevent the sale of adulterated or decayed food, and to punish the same.”
The motive and object of the ordinance in question are very patent, and. suggest themselves, at first blush, to the most casual reader. They are to prevent the use of well water in the making of bread by bakers who make bread for sale to the public; and, as a means to that end, to prevent the construction or maintenance of such wells on premises used for such purpose.
*1169 The evidence of medical and scientific experts found in this record makes it very clear that water from wells in this city is absolutely unfit for potable or cooking purposes; that it is impure, highly polluted with fecal and other foul matters, full of germs of disease, and that its use in the baking of bread is dangerous to health.
The primary purpose of the act, therefore, viz: the prevention of the use of such water for such purpose by persons who make bread for public distribution and consumption, falls within the clearest and most essential foundation of the police power, the preservation of the public health.
It is not, perhaps, for us to say whether the means adopted to accomplish this purpose are the best and most efficient, and the least injurious to private interests. These are matters of legislative determination. It is sufficient, for judicial satisfaction, if the means, are appropriate to the end, will operate toward its accomplishment, so intended in good faith, and are not unwarrantably and unnecessarily oppressive.
We think the means here adopted exhibited all these features.
If bakers, who either do not believe well water to be injurious, or who do not care whether it is injurious or not, have wells upon their premises, they are likely to use it. Such is the actual case of .defendant. He has the well, and he uses the water in making his bread. There is no other way of preventing its use so efficient as to suppress the well. Leave the well, and nothing less than the constant pressure of a guard could secure any certainty of its non-use. Fill up the well, and it is very certain he will not use its water any more. True, he may possibly get equally objectionable water from wells on other premises; but that may be more inconvenient or troublesome than to find a more wholesome water supply. At all events, the filling of the well has a tendency, and is, indeed, likely, to accomplish the purpose, and is one means appropriate thereto, and without which it certainly could not be securely accomplished. Far from being unwarranted or unnecessary, it is absolutely essential in order to carry out the end designed.
II.
The objection that this is class legislation has no force.
As said by the Supreme Court of the United States, “the discriminations, which are open to objection, are those where persons *1170 engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the law.” Soon Hing vs. Crowley, 113 U. S. 703.
And again: “Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operations it affects alike all persons similarly situated, is not within the amendment.” Barbier vs. Connolly, 113 U. S. 27; Railway Co. vs. Beckwith, 129 U. S. 26.
The ordinance, in this case, covers all persons engaged in the same business with defendant and similarly situated.
_ Judgment affirmed.