## JENSEN v. SOUTH DAKOTA CENT RY. CO.

Sess. Laws 1907, c. 215, imposing a double liability on railroad companies for damage by fire set by locomotives, does not deny due process of law or the equal protection of the laws.

Sess. Laws 1907, c. 218, imposing a double liability on railroad companies for stock killed or injured on their tracks for want of proper fences or cattle guards, does not deny railroad cmpanies due process of law, or the equal protection of the laws.

Sess. Laws 1907, c. 215, making railroad companies liable for damage by fire set by locomotives, imposes an absolute liability regardless of negligence.

Sess. Laws 1907, c. 218, making railroad companies liable for stock killed or injured on their tracks for want of proper fences or cattleguards, imposes an absolute liability regardless of negligence.

Sess. Laws 1907, cc. 215, 218, making railroad companies liable for damage by fire set by locomotives and for killing stock where it fails to maintain fences and cattle guards, are not unconstitutional because of the clause allowing double damages if plaintiff recover an amount equal to the offer to pay made by the company; it being a question solely for the Legislature whether it would afford a means of total or only partial release from the liability created.

Under Sess. Laws, c. 218, making railroad companies failing to fence against live stock and to maintain proper cattle guards liable for stock killed or injured, it is as much the duty of the company to maintain cattle guards as fences.

That fire was discovered shortly after a locomotive passed, and that small pieces of coke and cinders, still heated, were found at the place where the fire originated, were sufficient circumstances from which the jury might infer that the fire was communicated from the locomotive, in an action for the damage done.

In an action against a railroad company for double damages for loss by fire or stock killed or injured, it is proper practice for the jury to render a verdict for single damages only, and the court may then double them, or the jury under proper instructions may double

the damages, and it is immaterial which course is pursued, provided absolute certainty is attained.

(Opinion filed, May 24, 1910.)

Appeal from Circuit Court, Minnehaha County. Hon. Joseph W. Jones, Judge.

Action by H. C. Jensen against the South Dakota Central Railway Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

*Joe Kirby,* for appellant. *Krause & Krause,* for respondent.

McCOY, J. This action was brought to recover damages on account of fires alleged to have been caused and communicated from defendant's railway locomotives to plaintiff's property, and for a calf alleged to have been killed by defendant's train. There is no question raised concerning the sufficiency of the pleadings. Plaintiff introduced testimony tending to show that he was the owner of a certain designated quarter section of land situated in Lake county, through which land defendant's railway extends in a general north and south direction; that on the south side of said land is a public highway; that defendant had on each side of its track fenced its right of way over and across plaintiff's said land. Over proper objections of defendant, plaintiff was also permitted to introduce evidence that there was no cattle guard on defendants' right of way at the south side of plaintiff's land where the same joined the public highway. Plaintiff further offered testimony that on March 11, 1908, at a point on defendant's right of way over 20 rods north of the south side of plaintiff's land, the calf in question was struck and killed while on the right of way by defendant's locomotive; that said calf ran ahead of said train some distance before being struck; that it was a freight train going at a speed of about 15 miles per hour when it entered plaintiff's land; that the whistle was blown and an attempt made to stop said train, which was stopped about 100 feet after striking the calf; and that the value of said calf was $10. Plaintiff also introduced evidence tending to show that in April and September, 1908, fire was discovered upon plaintiff's land shortly after defendant's train had passed where said fire ori-

ginated, and that small pieces of coke and cinders, some with the heat of fire still therein, were found at the place where said fire originated, and that said fire destroyed timothy hay or grass belonging to plaintiff of the value of $12.' Plaintiff further showed that on November 20, 1908, he duly served on defendant two written notices, each accompanied by an affidavit thereof, one showing the injury and damage that had occurred to said calf, and the other the injury and damage that had occurred by reason of said fires. The jury returned a general verdict for plaintiff for $22, and also the following special findings: "Q. What was the value of the calf at the time it was killed? A.$10. Q. What damage, if any, did plaintiff sustain by reason of the fires in question? A. $12. Q. How did the calf get on the railroad track between the two lines of fence? A. From the highway." Thereafter the court rendered and entered judgment for plaintiff and against defendant for .$44, being double the amount of the verdict, with costs, to which judgment defendant duly excepted. Motion for new trial was made and overruled.

Defendant appeals, assigning the following errors: (1) In refusing to rule and decide as a matter of law that plaintiff was not entitled to recover damages on account of the calf killed. (2) In instructing the jury that the plaintiff was entitled to recover for the fires set and damages done as a result thereof if they believed that the said fires were set by the defendant's engines. (3) In stating to the jury that the defendant company would be responsible if the calf got upon the right of way from the highway because there was no cattle guard to keep it out. (4) In overruling defendant's motion to direct a verdict in its favor and against the plaintiff. (5) In receiving the verdict in favor of plaintiff and against the defendant. (6) In entering judgment in favor of plaintiff and against defendant. Especially as the judgment does not follow the verdict. The evidence is insufficient to sustain the verdict for the following reasons: (a) The evidence discloses that the defendant had its track properly fenced at the point where the plaintiff's calf was killed. (b) The evidence shows that the plaintiff's calf was a trespasser, and

fails to show any act of negligence on the part of defendant. (c) There is no evidence that the fires in question started upon defendant's right of way or that it was guilty of any act of negligence in regard thereto. (d) That the act of the Legislature allowing double damages to the plaintiff in such cases is in violation of the Constitution of the state of South Dakota as well as the Constitution of the United States, and is an attempt to deprive the defendant of its property without due process of law; denies to the defendant equal protection of the laws. (7) In refusing appellant a new trial.

As we view this case, there are but two legal propositions involved, and a disposition of those will dispose of all meritorious questions raised by the assignments of error: First, the constitutionality of the double damage acts found in chapters 215, 218, Laws 1907; second, the effect of these enactments as to the question of negligence. While new in this state, these questions seem to have been well considered elsewhere. It seems to be generally held that such statutes are valid and within the proper exercise of the police power by a state Legislature, and are not in conflict with the federal or state Constitutions on the ground that the railway companies are thereby deprived of their property without due process of law, or that they are denied equal protection under the law. Both chapters 215 and 218 stand upon the same foundation, and the same principles apply to both. Atchison, Topeka & Santa Fe Ry. Co. v. Mathews, 174 U. S. 96, 19 Sup. Ct. 609, 43 L. Ed. 909. The exercise of the police power in this class of cases is based upon the ground that, where persons are engaged in a calling or business attended with danger to other persons and their property, then the Legislature may step in and impose conditions upon the exercise of such calling or business for the general good and welfare of society, and may prescribe the terms on which such dangerous calling or business will be permitted to be carried on by persons in charge thereof, whether such persons happen to be private individuals or railway corporations. The fact that such legislative exercise of the police power applies alike to all persons and all corporations engaging in such

dangerous calling or business relieves it from the charge and contention that there is a denial of equal protection under the law by reason of such enactments. From the adjudicated cases it is evident that the fourteenth amendment to the Constitution of the United States does not limit the exercise of the police power of the state for the protection of its citizens. That this power should be applied to railway corporations is reasonable and just. The tremendous force brought into action in running railway cars renders it absolutely essential that every precaution should be taken against accident by collision, not only with other trains, but with animals. A collision with animals may be attended with more serious injury than their destruction. It may derail the cars and cause the death or serious injury of passengers. That there is peculiar danger of fire from the running of railway trains is obvious. The locomotives passing, as they do, at a great rate of speed, and often when the wind is blowing a gale, will, unless the utmost care is taken, scatter fire along the track. The danger to adjacent property is one which is especially felt in a prairie state. Another ground for the exercise of such police power found in the enactments in question is that the injury actually received in such cases is often so small that in many cases no effort would be made by the sufferer to obtain redress, if the private interest was not supported by the imposition of some punitive damage. Such seems to be the principles established by the following authorities: M. & St. L. Ry. Co. v. Beckwith, 129 U. S. 26, 9 Sup. Ct. 207, 32 L. Ed. 585; Welsh v. C., B. & Q. Ry. Co., 53 Iowa, 632, 6 N. W. 13; Bennett v. Wabash Ry. Co., 61 Iowa, 355, 16 N. W. 210; Mo. Pac. Ry. Co. v. Humes, 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463; Atchison, T. & S. F. Ry. Co. v. Mathews, 174 U. S. 96, 19 Sup. Ct. 609, 43 L. Ed. 909; Freund on Police Power, §§ 630-637. Under the provisions of chapters 215 and 218, the railway company failing to fence its tracks against stock and the railway company communicating fire from its locomotives to property along its line of road is made liable in damages to every person suffering such damage, and it is only necessary for such person to prove the loss or injury to his prop-

erty in order to recover. It seems to be established by the weight of the best authority that such enactments create an absolute liability wholly regardless of whether the railway company was negligent or not; that the question of negligence on the part of the railway company is wholly immaterial; that the statute creates the liability irrespective of the question of negligence on the part of the company. St. Louis R. Co. v. Mathews, 165 U. S. 1, 17 Sup. Ct. 243, 41 L. Ed. 611, affirming Mathews v. St. Louis R. Co., 121 Mo. 298, 24 S. W. 591, 25 L. R. A. 161; Walker Bros. v. Railway Co., 68 Mo. App. 471; M. & St. L. Ry. Co. v. Beckwith, 129 U. S. 26, 9 Sup. Ct. 207, 32 L. Ed. 585; Seaboard Air Line Ry. Co. v. Seegers, 207 U. S. 73, 28 Sup. Ct. 28, 52 L. Ed. 108; Hart v. Railway Co., 13 Metc. (Mass.) 99, 46 Am. Dec. 719; Railway Co. v. Mathews, 58 Kan. 447, 49 Pac. 602; St. Louis Ry. Co. v. Snaveley, 47 Kan. 637, 28 Pac. 615; Mo. Pac. Ry. v. Merrill, 40 Kan. 404, 19 Pac. 793; B. & O. Ry. Co. v. Kreager, 61 Ohio St. 312, 56 N. E. 203; Freund, Police Power, § 630; Cooley, Const. Lim. p. 840; 33 Cyc. 1327.

The question is also raised that chapters 215 and 218 are unconstitutional on account of the last clause thereof, which provides as follows: "If such company shall, within sixty days, offer in writing to pay a fixed sum being the full amount of the damage sustained and the owner shall refuse to accept the same, then any action thereafter brought for such damage, when such owner recovers a less sum as damages than the amount so offered, then such owner shall recover only his damages, and the railway company shall recover its costs." The appellant contends that, under this clause, the company would be required to pay double damages in the event that plaintiff recovered an amount equal to the offer made by the company; but the answer to this contention is, the subject being within the proper scope of constitutional police power, the Legislature was the judge of the conditions to be imposed. Am. Linseed Oil Co. v. Wheaton, 25 S. D. ——, 125 N. W. 127; Tiedeman, Police Power, pp. 1-16; Cooley, Const. Lim. 706; St. Louis v. Liessing, 190 Mo. 464, 89 S. W. 611, 1 L. R. A. (N. S.) 918, 109 Am. St. Rep. 774. Like enactments, without

the clause in question annexed thereto, are held to be constitutional in the other jurisdictions hereinbefore cited. This clause adds nothing to, and it takes nothing from, ·the responsibility or liability of the company created by. these enactments, but only affords the company an opportunity to release itself from the liability for double damages under certain circumstances without affecting the liability itself in case the company desires to avail itself of the opportunity thus afforded. That the Legislature has not seen fit to make the opportunity created solely for the benefit of the company more broad and extensive is not a question for the courts. It was a question solely for the Legislature to decide whether it would afford a method or means of total or only partial release from the statutory liability created.

Appellant contends that the court erred in stating to the jury in an instruction that the defendant company would be responsible if the calf got upon the right of way from the highway because there was no cattle guard to keep it out. Under chapter 218 it is as much the duty of the company to construct and maintain cattle guards as it is to construct the fence. In Hollyman v. Railway Co., 58 Mo. 480, under a like statute, and in an identical case, the Supreme Court of Missouri sustained a very similar instruction. Keeping in view the purpose of the statute, it is just as essential that cattle roaming at large upon the highway be kept off the track as any others. M. & St. L. Ry. v. Beckwith, supra.

Appellant also contends that the court erred in instructing the jury that plaintiff was entitled to recover for the fires set and damage done as a result thereof if they believed that said fires were set by defendant's engines. That fires was discovered shortly after defendant's locomotives passed, and that small pieces of coke and cinders, with the heat of fire still therein, were found at the place where the fire originated, were sufficient circumstances from which the jury might reasonably infer that the fires were communicated from the engines; thus rendering the instruction complained of proper.

The question of practice is also raised that the judgment is irregular because it does not follow the verdict. It seems to be

generally held that either the jury or the court may double or treble the damages in this class of cases. It seems to be proper practice for the jury to render a verdict for single damages only, and the court is then authorized to double them. It also seems to be proper practice for the jury under proper instructions to double or treble the damages in a general verdict in a proper case. 13 Cyc. 253; 15 Cent. Dig. tit. "Damages;" § 575; Wood v. Railway Co., 58 Mo. 109; Memphis Ry. Co. v. Carlley, 39 Ark. 246; Broschart v. Tuttle, 59 Conn. 1, 21 Atl. 925, 11 L. R. A. 33. It is immaterial which course is pursued, provided absolute certainty is attained, and this can be done by preparing the proper form of verdict. Galvin v. Gualala Mill Co., 98 Cal. 268, 33 Pac. 94. It is also held that, to authorize the court to double or treble the damages, it must expressly appear that the verdict was for single damages only, for otherwise the presumption is that the jury trebled them. Hughes v. Stevens, 36 Pa. 320; Wymond v. Amsbury, 2 Colo. 213. In this case the special findings are absolutely certain that the jury found only single damages, and the court was therefore authorized to double such amount in rendering judgment.

Finding no error in the record, the judgment and order denying a new trial appealed from are affirmed.