Isadore **ABERLIN**, on behalf of himself and all other individuals similarly situated, Plaintiff,

v.

**DOMESTIC RELATIONS COURT OF** The CITY OF NEW YORK, by John Warren Hill, Presiding Justice, Peter Campbell Brown, Corporation Counsel of the City of New York, Averill Harriman, Governor of the State of New York and Louis J. Lefkowitz, Attorney General of the State of New York, Defendants.

United States District Court
S. D. New York.
Feb. 5, 1958.

Dora Aberlin, New York City, for plaintiff, Leonard J. Meiselman, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, for defendants Hill, Harriman and Lefkowitz pro se, Paxton Blair, Sol. Gen., Dunton F. Tynan, Jean R. McCoy, Albany, N. Y., of counsel.

Peter Campbell Brown, Corp. Counsel, for City of New York, Leo A. Larkin, Acting Corp. Counsel, Joseph M. Callahan and Rose Schneph, New York City, of counsel.

SUGARMAN, District Judge.

Isadore Aberlin, on behalf of himself and all other individuals similarly situated, has commenced an action in this court against the Domestic Relations Court of the City of New York by Presiding Justice John Warren Hill, Corporation Counsel of the City of New York Peter Campbell Brown, Governor of the State of New York Averill Harriman and Attorney General of the State of New York Louis J. Lefkowitz. The ultimate relief sought by plaintiff is:

"1. That a three Judge Court be established pursuant to 28 U.S.C. Section 2284 for relief by injunction as hereinafter prayed.

"2. That an injunction issue herein to the Domestic Relations Court of the State of New York suspending or restraining enforcement, application or execution of the Uniform Support of Dependents Law as passed by the legislature in 1949 and amended thereafter, in so far as said Uniform Support of Dependents Law permits the award of support money for the support of an infant child without permitting the litigation of defenses to such action and without permitting inquiry into the right to custody and/or the fitness to have custody of the person or persons seeking such support for an infant child.

"3. That this Court adjudge and declare that the Uniform Support of Dependents Law is void and unconstitutional in so far as it prohibits or proports [sic] to prohibit the inquiry into the right to custody and fitness to have custody of the person or persons seeking support for an infant child outside the jurisdiction of this State pursuant to the provisions of the Uniform Support of Dependents Law."

The complaint alleges that

"[t]his cause of action arises under and is justified by the Constitution of the United States, Article IV, and Article [sic] XIV, Section 1;

the act passed by the New York State Legislature in 1949, known as the Uniform Support of Dependents Law and amended thereafter in 1952, 1953, 1955, 1956 and 1957."

The defendants move to dismiss the complaint. The plaintiff cross-moves for the convening of a three judge court to hear and determine the cause.

Accepting the allegations of fact in the complaint as true on this motion to dismiss, it appears that plaintiff is the father of one Dorothy Gail Aberlin, an infant who in November 1957 was 12 years of age. Selma Aberlin, the infant's mother, divorced plaintiff in Massachusetts in 1953 and was given custody of their child. The divorce decree required plaintiff to pay $25 weekly for the support of his child. In February 1955 Selma Aberlin gave the plaintiff custody of their child and went to the psychiatric division of Bellevue Hospital in New York City for observation of her mental condition. James Zisman, Selma Aberlin's brother-in-law, thereafter arranged for her transfer to Massachusetts, where she was adjudicated an incompetent person. Selma Aberlin has not yet recovered her sanity. In April 1955 James Zisman, without notice to plaintiff and against his wishes, took the child Dorothy Gail Aberlin from the school she was attending and transported her to Massachusetts. This "abduction" was under purported authority of an order of the Probate Court of Suffolk County, Massachusetts, procured without notice to plaintiff. The order gave custody of the child to Lenore Zisman, who is the sister of Selma Aberlin and the wife of James Zisman. Plaintiff in July 1955 sought unsuccessfully to recover custody of his daughter through a habeas corpus proceeding in the Massachusetts Superior Court of Boston. Relief was denied him on the ground that his forum for relief was the Probate Court. Plaintiff refused to apply to that court for relief.

In September 1955 the Zismans obtained an order vacating the decree awarding Lenore Zisman custody ab initio and reinstating that provision of the original divorce decree which awarded custody to the incompetent Selma Aberlin.

In September 1955 an application was brought in the Domestic Relations Court of New York City, in the name of Selma Aberlin on behalf of Dorothy Gail Aberlin, for the latter's support. This proceeding was commenced under the Uniform Support of Dependents Law (L. 1949, c. 807, as amended, 65 McKinney's Unconsol.Laws, § 2111 et seq.).

Plaintiff sought to prevent the processing of this application by commencing a custody proceeding in the New York Supreme Court. This attempt was unsuccessful. The custody proceeding was dismissed on the ground that the New York Supreme Court lacked jurisdiction. Aberlin v. Aberlin, 150 N.Y.S. 2d 454. The support proceeding in the Domestic Relations Court of New York City resulted in a "temporary" support order. An appeal was taken to the Appellate Division. 3 A.D.2d 417, 161 N.Y. S.2d 305. On appeal the matter was reversed on procedural grounds and sent back to the Domestic Relations Court with instructions. The Domestic Relations Court thereupon held a hearing and ordered the plaintiff to pay $25 weekly for his daughter's support in addition to sums for orthodonture and camp.

Plaintiff complains that at the hearing the court refused to hear his "defenses" that pursuant to New York Law, the petitioner mother as a still adjudicated incompetent had no standing to bring an action; that the mother had been illegally released from the Boston State Hospital in violation of Boston Statutes; that the father had evidence to show a conspiracy to release the mother from the Boston State Hospital in violation of Boston law; that the father had the right to custody of his child both by operation of law when the mother became incompetent and by the mother's own affirmative acts; that the child had been illegally taken from him in violation of the penal statutes of New York State; that the child and the mother were being exploited; that the child was being used as

a pawn to extract money from the father and that demands for excessive amounts of money had been made for relinquishing custody of the child to him; that the child was being used as a pawn to compel his submission to the Probate Court of Massachusetts for the purpose of obtaining modification of the divorce decree in other respects than the question of custody of the child.

■ On the foregoing facts, the plaintiff urges that the Uniform Support of Dependents Law "as interpreted is void and unconstitutional with respect to the provisions for the support of a dependent child, in that they violate Amendment XIV, Section 1 of the United States Constitution." [1]

Plaintiff's constitutional arguments are:

"The act with reference to support of minor children violates the provision relative to equal protection of the laws."

In the first branch of this argument, plaintiff urges in effect that enforcement of the Uniform Support of Dependents Law deprives him of "equal protection" because a non-resident petitioner can obtain a support order thereunder without being subject to certain provisions of the Domestic Relations Court Act.[2] This contention is based on his assertion that "[t]he Uniform Support of Dependents law under the opinion of the Appellate Division makes a sharp division between the right to custody and the obligation to support. Such a division is capricious and arbitrary and deprives the plaintiff and more important his infant daughter of the equal protection of the laws."

■ The "equal protection" clause guarantees that there shall be no "discriminating and partial legislation * *

in favor of particular persons as against others in like condition." [3]

"Equal protection of the laws means the protection of equal laws.[1] It forbids all invidious discrimination but does not require identical treatment for all persons without recognition of differences in relevant circumstances. It requires 'that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses.' [2] The Amendment was not 'designed to interfere with the power of the State, sometimes termed its "police power," to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity * * * Regulations for these purposes may press with more or less weight upon one

---

1. "Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the qual protection of the laws."

2. §§ 92(7, 8, 18, 19), 111, 113, 114.

3. Minneapolis & St. L. R. Co. v. Beckwith, 1889, 129 U.S. 26, 28, 29, 9 S.Ct. 207, 208, 32 L.Ed. 585.

than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon anyone, but to promote, with as little individual inconvenience as possible, the general good. Though, in many respects, necessarily special in their character they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions.'[3] The due process and equal protection clauses overlap but the spheres of protection they offer are not coterminous. The due process clause 'tends to secure equality of law in the sense that it makes a required minimum of protection for everyone's right of life, liberty, and property, which the Congress or the legislature may not withhold. * * The guaranty [of equal protection] was aimed at undue favor and individual or class privilege, on the other hand, and at hostile discrimination or the oppression of inequality, on the other'[4]. * * *

"1. Yick Wo v. Hopkins, 1886, 118 U.S. 356, 369 [6 S.Ct. 1064, 30 L.Ed. 220].

"2. Barbier v. Connolly, 1885, 113 U.S. 27, 31 [5 S.Ct. 357, 28 L. Ed. 923].

"3. Ibid. [113 U.S.] 31–32 [5 S.Ct. 359–360].

"4. Truax v. Corrigan, 1921, 257 U.S. 312, 332–333 [42 S.Ct. 124, 66 L.Ed. 254]."[4]

There are no facts recited in the complaint which tend to show that the Uniform Support of Dependents Law is legislation falling in this constitutionally prohibited class.

■ The law of New York is that a father is absolutely liable for the support, within his means, of his minor children.[5]

The separability of the right to custody from the obligation of support is obvious.[6] Plaintiff's complaint shows only that he is being required to fulfill an obligation, viz., support of his minor child, to the same extent as all other persons similarly situated.

The second branch of plaintiff's argument under the "equal protection" clause is that New York's "interpretation of the Uniform Support of Dependents Law permits the illegal seizure and transportation of children across state lines for ulterior purposes, without giving the respondent an opportunity to defend his child against such seizure. The Uniform Support of Dependents Law denies the father and child the equal protection of the New York State Penal Law [McKinney's Consol.Laws, c. 40], Section 1250, subdivision 2, in that the interpretation thereof would seem to condone the acts forbidden by said statute and permits the violator of said statute to profit by his own wrong-doing."

■ Plaintiff says in effect that a law which does not condemn kidnapping condones the crime and thus is unconstitutional. This is absurd, as is the fourth branch of this argument in which plaintiff says that the legislation puts a premium on illegal acts, presumably kidnapping, by forcing a person in plaintiff's position to litigate custody in a distant state. The act is not concerned with custody, deals only with support and in no way requires a person in plaintiff's position to submit to a foreign jurisdiction.

■ The third branch of the plaintiff's first attack on the statute is that it raises economic barriers because petitioner is represented by a public official but a respondent in plaintiff's circumstance may litigate his rights only by undergoing the expense of travel to a

---

4. Pp. 1144–1145, Constitution of the United States of America, Analysis and Interpretation, Senate Document No. 170, 82nd Cong., 2d Sess.

5. Landes v. Landes, 1 N.Y.2d 358, 153 N.Y.S.2d 14, 19, 135 N.E.2d 562, appeal

dismissed 352 U.S. 948, 77 S.Ct. 325, 1 L.Ed.2d 241.

6. Landes v. Landes, note 5 supra; cf. Vanderbilt v. Vanderbilt, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456.

foreign court to try his rights *to custody*. The Uniform Support of Dependents Law has no concern with custody. It is designed to insure that those responsible will support their dependents. Plaintiff does not deny his obligation to maintain his child. He does not claim poverty. He has no status to attack the statute as economically oppressive.

It is also plaintiff's contention that

"The Uniform Support of Dependents Law is void and unconstitutional as it relates to the support of minor children, and as interpreted denies due process to the respondent in that the respondent is not permitted to enter or litigate any defenses he may have to the demand for support by those either illegally holding the child or unfit to have her custody, and permitting him to testify only as to his earnings and ability to support. Such legislation and/or interpretation thereof is summary and arbitrary and amounts to confiscation without an opportunity to be heard. In the instant case the plaintiff father was denied all right or opportunity in the Domestic Relations Court to go into any of the facts relative to the manner in which custody of the child had been obtained, how the child happened to be in the State of Massachusetts, and the fitness and capacity of the person or persons seeking to obtain money for the child's support."

The plaintiff raises no issue of "due process" by these allegations. As said before, the Uniform Support of Dependents Law looks to compelling the support of dependent persons by those responsible therefor. Plaintiff does not contend that the amount of support he is ordered to pay is excessive or that the moneys will not in fact be used for the support of his daughter. Plaintiff's objection to the statute stems from his stubborn but unwarranted refusal to agree that his obligation to support his daughter may be judicially examined and enforced independently of a review of his claimed custodial rights.

It is agreed by the parties hereto that a complaint of this nature may be dismissed without the convention of a statutory district court of three judges only if it does not raise a substantial federal question.

"The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject." [7]

■ The instant case is subject to both infirmities. For the reasons given above, the complaint is deficient on its face. Bell v. Hood is not to the contrary. Plaintiff's cause is "insubstantial [and] frivolous, and * * * does [not] in fact raise serious questions, both of law and fact, which the district court can decide only after it has assumed jurisdiction over the controversy." [8]

Further, substantially similar questions were attempted to be raised in Landes v. Landes. Per Curiam, the Supreme Court dismissed the appeal from the Court of Appeals of New York for want of a substantial federal question.[9]

The defendants' motions are granted; the cross-motion is denied. It is so ordered.

---

7. California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323.

8. 327 U.S. 678, 683, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939.

9. 352 U.S. 948, 77 S.Ct. 325, 1 L.Ed.2d 241.