**Edward BURCHETTE and Dean Eakins, Appellees,**

v.

**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Appellant.**

No. 2-57083.

Supreme Court of Iowa.

Oct. 15, 1975.

Rehearing Denied Dec. 11, 1975.

B. A. Webster, Gamble, Riepe, Burt, Webster & Fletcher, Des Moines, for appellant.

C. K. Pettit, Harris & Pettit, Bloomfield, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

Defendant railroad appeals a judgment awarding damages for destruction of plaintiffs' cattle. At issue are provisions in chapter 478, The Code, which defendant challenges as unconstitutional. The trial court held the challenged provisions are not constitutionally offensive and we agree.

The facts are uncontroverted. Five head of plaintiffs' cattle escaped from their enclosure through a gate located on plaintiffs' land. They thereafter meandered along a secondary road, then onto a gravel road, and traveled the gravel road to where it crossed defendant's tracks. No cattle guards were maintained at this crossing. Defendant maintains no cattle guards at any of its approximately 1100 rural crossings and has not done so for at least 40 years. Defendant believes no cattle guards are now maintained by any railroad in Iowa.

The cattle entered the right-of-way and continued along the tracks until they were struck and killed by defendant's train. Damages were stipulated to be $2125.20.

No negligence was alleged. Plaintiff relied upon §§ 478.1, 478.2, and 478.6, The

Code, which at time of trial required a railroad, in addition to its duty to erect and maintain fences, to make cattle guards wherever the line entered improved or fenced land and at all public crossings. A failure to do so rendered the railway liable to the owner of stock killed or injured by the failure, unless occasioned by the willful acts of the owner. In order to recover it was only necessary for the owner to prove his loss.

This suit is unaffected by [House File 127], Acts of the 66th G.A., 1975 Session. That enactment repeals the requirement to maintain cattle guards and makes various other changes, effective July 1, 1975.

I. We held the challenged provisions constitutional in *Jones v. Galena and Chicago Union Railroad Company*, 16 Iowa 6 (1864); *Tredway v. S. C. & St. P. R. Co.*, 43 Iowa 527 (1876); and *Welsh v. C. B. & Q. R. Co.*, 53 Iowa 632, 6 N.W. 13 (1880). The United States Supreme Court held the Iowa statute constitutional in *Minneapolis and St. Louis Railway Company v. Beckwith*, 129 U.S. 26, 9 S.Ct. 207, 32 L.Ed. 585 (1889). The latter case held Iowa was free to prescribe regulations for the health, good order and safety of society and to adopt such measures as would advance our interest and prosperity. It pointed out the nature and extent of such legislation would depend upon the judgment of our legislature. After noting that various kinds of businesses and industries would be subject to more legislation than others, the court said:

" * * * [I]t is evident than the fourteenth amendment does not limit the subjects in relation to which the police power of the state may be exercised for the protection of its citizens. That this power should be applied to railroad companies is reasonable and just. The tremendous force brought into action in running railway cars renders it absolutely essential that every precaution should be taken against accident by collision, not only with other trains, but with animals * * *." 129 U.S. at 33–34, 9 S.Ct. at 209, 32 L.Ed. at 588.

Since all railroads were treated alike by our statutes the Supreme Court believed the statute in question was then constitutionally valid.

■ Relying on the rationale of the Florida Supreme Court in *Atlantic Coast Line R. Co. v. Ivey*, 148 Fla. 680, 5 So.2d 244, 139 A.L.R. 973 (1941), defendant argues the passage of time and certain statutory and social changes now demand a different result. Keystone of defendant's argument is the fact that in the intervening years Iowa has changed from an open range state to one in which owners of livestock have a statutory obligation to restrain their livestock from running at large. See chapter 188, The Code.

Defendant states the issue which is central and controlling in this appeal: "The question here is whether it is constitutional to hold a railroad liable for failure to maintain cattle guards against cattle running at large when cattle are no longer allowed to run at large."

Defendant also argues economic realities make it impossible for it to maintain cattle guards at its 1100 rural crossings. Finally, defendant asserts it is unfair to expose the railroad industry to a liability from which carriers using public highways are excused.

We believe these arguments go only to the wisdom of the legislation challenged and not to its constitutionality. The statutory requirement to restrain livestock is certain to benefit a railroad in terms of reducing its risk of liability under the statute. But it does not follow that the reduction of those risks should obviate the statutory duty. Constitutionality of such statutes does not seem to turn on whether or not the state is an open range state. 74 C.J.S. Railroads § 566, page 1163.

The railroad argues cattle guards are no longer economically feasible. We may assume the economic realities are as defendant describes them. We may also assume, as defendant suggests, these realities result in part from cost of their construction and

in part from a railroad's risk of liability for their presence. It would seem apparent the reduced risk to a railroad by the restraint requirement would contribute even more to the lack of economic feasibility of cattle guards. We believe these to be matters appropriate only to argue in the forum where defendant's battle was later fought and won: the legislature.

The railroad's arguments in the instant case were made to the United States Supreme Court in a somewhat similar context in 1968, in a challenge of two Arkansas "full crew" railroad statutes. The arguments were answered as follows:

"There remains for consideration only the railroad's contention that the  * * * laws violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Little need be said of the claim that the statutes violate the Equal Protection Clause for the reason that they discriminate against the railroad industry by singling it out for regulation and making no provision for minimum crews on 'motor buses, taxicabs, airplanes, barges, cargo trucks, or any other segment of the transportation industry.' The statutes as written, requiring, for example, not 'less than an engineer, a fireman, a conductor and three [3] brakemen,' could scarcely be extended in their present terms to such means of transportation as taxicabs or airplanes. Nor was the legislature, in attempting to deal with the safety problems in one industry, required to investigate the various differing hazards encountered in all competing industries and then to enact additional legislation to meet these distinct problems.

"The railroads also argue that the statutes violate the Due Process Clause because they are 'unduly oppressive' and impose costs on the regulated industry that exceed the public benefits of the regulation. The District Court agreed with this position, holding that the impact of the full-crew laws today is 'unreasonable and oppressive' and therefore a violation of due process. Insofar as these arguments seek to present an independent basis for invalidating the laws, apart from any effect on interstate commerce, we think, with all due deference to appellees and the District Court, that these contentions require no further consideration. (Authorities)." *Brotherhood v. Chicago R. I. & P. R. Co.*, 393 U.S. 129, 142–143, 89 S.Ct. 323, 330, 21 L.Ed.2d 289, 299 (1968).

We believe the underlying reasons for the statute did not evaporate with the reduction in the amount of livestock which might be struck by trains. Even though farmers are now obliged to restrain their livestock they are not always successful. When farmers negligently fail they are sometimes liable for resulting damages. *Wenndt v. Latare*, 200 N.W.2d 862 (Iowa 1972). See chapter 188, The Code. But the legislature was not bound to relieve the railroad of its duty when it invested the livestock owner with his duty to restrain.

In *Jones v. Galena and Chicago Union Railroad Company*, supra, 16 Iowa at 10, we said it might " * * * be claimed that all laws in relation to the carrying of passengers or freight, or all statutes prescribing the duties of employers and agents, should apply alike to railroads, stage companies, steamboat lines, or any other carriers for hire. And yet, we know that in view of the different agencies employed, the magnitude of the risks, and many other considerations, different rules have been, and probably always will be, deemed necessary. * * *." See *Chicago and North Western Railway Co. v. Bishop*, 390 P.2d 731 (Wyo.1964). Defendant's first assignment is without merit.

■■■ II. Defendant separately challenges § 478.7, The Code. That section was also amended by [House File 127], Acts of the 66th G.A., 1975 Session. It provides for double damages where the railroad willfully refuses to pay within 30 (now by amendment 90) days after demand. This feature of our statute was expressly held constitutional by us in *Tredway v. S. C. & St. P. R. Co.*, 43 Iowa 527 (1876), and by the United States Supreme Court in *Minneapolis and*

**152**

St. Louis Railway Company v. Beckwith, supra.

The purpose of this provision is to take the profit out of the practice of refusing to pay such claims in the hope that, because they are generally small, they will not be pursued. In *Beckwith*, 129 U.S. at 34–35, 9 S.Ct. at 210, 32 L.Ed. at 588 the challenge was answered as follows: " * * * [S]uch damages can be claimed for * * * injuries to cattle only where the company has received notice and affidavit of the injury committed 30 days before the commencement of the action, and has persisted in refusing to pay for the value of the property destroyed or the damage caused. There must be not merely negligence of the company in not providing guards against accidents of the kind, but also its refusal to respond for the actual damage suffered. Without the additional amount allowed there would be few instances of prosecutions of railroad companies where the value of the animals killed or injured by them is small, as in this case; the cost of the proceeding would only augment the loss of the injured party. * * *." See also *Mackie v. Central Railroad of Iowa*, 54 Iowa 540, 542–543, 6 N.W. 723, 724–725 (1880).

We also believe the section is not subject to challenge under the equal protection clause. All railroads are treated alike by the provisions and, for the reasons hereinbefore explained, a reasonable basis exists for treating railroads differently than other industries. A statute is constitutional unless it clearly, palpably, and without doubt infringes upon the constitution. *Keasling v. Thompson*, 217 N.W.2d 687 (Iowa 1974). Statutes of this kind are generally held to be constitutional. 65 Am.Jur.2d, Railroads, § 603, page 729.

We find no error. The judgment of the trial court is

Affirmed.