## STATE ex rel. LONGSTAFF, Relator, v. ANDERSON, STATE AUDITOR, Defendant.

### (146 N. W. 703.)

**1.  Constitutional Law—Legislative Power—Raising Revenue.**

Full legislative power to raise public revenues and to appropriate same to public purposes, is vested solely in the legislative branch of the state government, such power being without restraint or limitation, except by the Constitution, or through some surrender of power to the federal government as evidenced by the federal Constitution.

**2.  Constitutional Law—Statutes—Construction Favoring Validity—Palpable Conflict.**

No legislative act should be declared unconstitutional unless the conflict between its provisions and some principle of constitutional law is so plain and palpable as to leave no reasonable doubt as to its validity.

**3.  State—Revenues—Legislative Appropriations—Limitation of Amount—Special Fund—"Appropriation."**

Const., Art. 11, Sec. 9, declares that no warrants shall be drawn on State Treasurer except against appropriation first made; Art. 12, Sec. 1, prohibits payment of any money out of state treasury except upon appropriation by law; Laws 1909, Ch. 210, relating to insurance department fund, provides that moneys received by that department shall be paid out of the fund upon warrants drawn thereon; and there were similar provisions relative to the militia, game, and various other special funds, all of which had been recognized by State Auditor as appropriating moneys in, and as authorizing his drawing warrants on such funds. **Held,** that, as the state Constitution does not prescribe what is necessary to a valid appropriation, an "appropriation," within the meaning of said constitutional provisions, is the act of appropriating something to a particular person or use, and, the Constitution not requiring appropriations to be for fixed sums, there was a valid appropriation of each and all of said special funds, received as provided for by said several statutes, and the State Auditor cannot be restrained by writ of prohibition from drawing warrants thereon.

(Opinion filed April 13, 1914.)

Prohibition by the State of South Dakota, on the relation of John Longstaff, against H. B. Anderson, State Auditor,

to prohibit defendant from drawing state warrants against certain special funds of state moneys. Writ denied.

*Null & Royhl,* for Relator.

Chapter 210, Session Laws, 1907, by Section 9, it is provided that all money received by the commissioner of Insurance shall be paid into the State Treasury for an Insurance Fund and shall be used for the purpose of defraying the expenses of the Department. All expenses including salaries and personal expenses shall be paid by the Treasurer out of the insurance fund on warrants drawn by the Auditor on vouchers approved by the Commissioner and the Governor.

In the General Appropriation Act of 1913 (Laws 1913, Ch. 23), there is no appropriation from the insurance fund.

As to the Special Militia Fund (Laws 1913, Ch. 367), the fund is, by sec. 10, appropriated for maintenance of National Guard.

As to the Game Fund (Laws 1909, Ch. 240, and the new law (Laws 1913, Ch. 223), there is no appropriation in either law to pay salaries and expenses of the wardens.

As to the Dairy Fund (Laws 1907, Ch. 296), there is no appropriation.

As to the Public Examiner's Fund, (Laws 1911, Ch. 256), there is no appropriation.

As to Fire Marshal's Fund, (Laws 1907, Ch. 167), it is a second special fund in charge of insurance department.

As to the Stock Food Fund, (Laws 1911, Ch. 238, as amended by Laws 1913, Ch. 332), there is no appropriation.

"As all appropriations must be within the legislative will, it is essential to have the amount of the appropriation, or the maximum sum from which the expenses could be paid, stated. This legislative power can not be delegated nor left to the recipient to command from the State Treasury sums to any unlimited amount for which he might file claims. * * * * it is usual and necessary to fix a maximum." State v. Eggers, 16 L. R. A. N. S. 630; Ingram v. Colgan 106 Cal. 118; Institute v. Henderson, 18 Colo, 105; Pyne v. LaGrave, 23 Nev. 25; see exhaustive note 16 L. R. A. N. S. 630; Henderson v. Stover, 13 L. R. A. 222; Gavigan v. Dierkes, 214 Mo. 578; Menefee v. Askew, 27 L. R. A. N. S. 537; (Game Warden

Case.) ; State v. Stover, 27 Pac. 850; (Interest on School Fund Case.)

*Royal C. Johnson, Attorney General,* for Defendant.

The complaint does not state facts sufficient to constitute a cause of action. The special funds complained of in this action have been "appropriated by law" as required by the constitution. Section 9, Article 11, State Constitution. Section 1, Article 12, State Constitution.

The Constitution does not contain a provision limiting the time for which appropriations may be made. There being no such limit fixed in the Constitution, the power of the legislature to appropriate by law is supreme. So long as the appropriation is an appropriation by law, it makes no difference in what form the appropriation act is passed. The policy of making appropriations in different forms is a matter with which the court cannot interfere. The legislature has power to appropriate the public funds as it sees fit, except when limited by the constitution. Carter v. Thorsen, 5 S. D. 474; State v. Parkinson, 5 Nev. 15; People v. Brooks, 16 Cal. 11; People v. Pacheo, 27 Cal. 175.

The various definitions given by the courts of an appropriation of public funds are numerous. Case note, in 22 American State Reports, 638-649.

While it is customary for the legislature in an appropriation act to set aside from the general fund a certain designated sum of money for a definite purpose, yet appropriation acts are often found setting aside a certain source of revenue and appropriating the money derived therefrom to a given purpose. This is the nature of the several funds involved in this action. Ristine v. State, 20 Ind. 328; People v. Miner, 46 Ill. 384; State v. Babcock, 24 Neb. 787; People v. Pacheo, 27 Cal. 175; People v. Brooks, 16 Cal. 11; State v. Parkinson, 5 Nev. 15; People v. Auditor, 9 Mich. 141; McDonald v. Norman, 95 Ky. 953; 26 S. W. 808.

Although the amount is uncertain at the time of the appropriation, it is not essential to the validity of an appropriation that funds to meet the same should be at the time in the treasury, or that it should be of an amount certainly ascertained prior to the appropriation and such an appropriation made prospective.

That is, it may be made in one year of the revenues to accrue in another or future years, the law being so framed as to address itself to such future revenues. Ristine v. State, 20 Ind. 339; People v. Miner, supra; People v. Brooks, supra; People v. Pacheo, supra; In re state warrants, 6 S. D. 518; State v. Moore, 61 Am. St. Rep. 546; State v. Hipple, 7 S. D. 234; State v. Babcock, supra; Stein v. Morrison, 9 Idaho 426; 75 Pac. 246; State v. McCauley, 15 Cal. 430; McBean v. Fresno, 112 Cal. 167; 44 Pac. 358; 31 L. R. A. 794; 53 Am. St. Rep. 191.

It is no objection to an appropriation act that it is not in the usual technical form of appropriation acts. However, the Constitution does not prescribe any form of words to be used in appropriation acts, and no particular form of words is necessary, and an act need not be designated as an appropriation. Campbell v. Board, 115 Ind. 594; 36 Cyc. 892; 3 Cyc. 565; State v. Bordelon, 6 La. Ann. 68; State v. Moore, supra; State v. King, 67 S. W. 812; 108 Tenn. 271; Proll v. Dunn, 80 Cal. 220; 22 Pac. 143; Humbert v. Dunn, 84 Cal. 57.

While it is customary to use the words, "There is hereby appropriated the sum," in bills appropriating money for the payment of salary and other expenses of the government, it is not essential to the validity of an appropriation that these words or any of them should be used. Humbert v. Dunn, supra; State v. Grimes, 7 Wash. 191; 34 Pac. 833; Humbert v. Dunn, supra.

So a direction to the proper officers to pay money out of the treasury on a given claim or for a given object may be an appropriation, and such an appropriation comes within the definition set out in Ristine v. State. State v. King, supra; State v. Eggers, 16 L. R. A. (N. S.) 630; Henderson v. Com., 129 Ind. 92; 28 N. E. 127.

WHITING, J. This is a special proceeding brought in this court wherein the relator seeks a writ of prohibition prohibiting the defendant, as state auditor, from drawing and issuing warrants on the state treasurer against the following special funds:

Insurance Department Fund collected under the provisions of Chapter 210, Laws 1909;

Special Militia Fund collected under the provisions of chapter 267, Laws 1913;

Game Fund collected under the provisions of chapter 240, Laws 1909, and chapter 226, Laws 1913;

Dairy Fund collected under the provisions of chapter 296, Laws 1909;

Public Examiner's Contingent Fund collected under the provisions of chapter 256, Laws 1911;

Fire Marshal Fund collected under the provisions of chapter 167, Laws 1907; and

Stock Food Fund collected under the provisions of chapter 332, Laws 1913.

To the relator's petition the defendant interposed a demurrer raising two questions: (1) That the application for the writ does not, on its face, state facts sufficient to constitute a cause of action, or to entitle the relator to the relief asked; (2) That there is a defect of parties plaintiff, in that the relator has no such interest in the subject matter as to authorize his bringing this proceeding. We shall only consider the first ground.

The several funds above mentioned are accumulated from licenses, fees for examination made by officers, fines imposed for violations of the provisions of the several acts, special taxes, etc., and each of the several acts above mentioned contains a section purporting to set aside the moneys received into the fund provided thereby, or such part thereof as may be needed, for the purpose of paying the salaries of the officers provided for by such act, and for the purpose of paying the expenses of such officers incident to the discharge of their duties and other expenses incident to enforcing and carrying out the purposes of the act. These several provisions, thus purporting to set aside these several funds for such purposes, have been recognized by defendant as appropriating the moneys in these funds and as authorizing his drawing warrants on such funds. Relator contends that these several alleged appropriations are unconstitutional—that they are in conflict with the following provisions found in the Constitution of this state: Section 2, article 11, "* * * no warrant shall be drawn upon the state treasurer, except in pursuance of an appropriation for the specific purpose first made," Section 1, article 12, "No money shall be paid out of the treasury, except

upon appropriation by law and on warrant drawn by the proper officer."

[1-3] It must be borne in mind at all times that the full legislative power, including the power to raise public revenues and to appropriate the same to public purposes, is vested solely in the legislative branch of our state government, (Carter v. Thorson, 5 S. D. 474, 59 N. W. 469; 24 L. R. A. 734; 49 Amer. Stat. Rep. 893); that the Legislature, in the exercise of such power, is under no restraint or limitation whatsoever except such as may have been imposed by the people of this state through our state Constitution, or through some surrender of power to the federal government as evidenced by the federal Constitution; and that no legislative act should be declared unconstitutional unless the conflict between its provisions and some principle of constitutional law is so plain and palpable as to leave no reasonable doubt of its invalidity. In re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321; State v. Becker, 3 S. D. 29, 51 N. W. 1018; Bon Homme Co. v. Berndt, 15 S. D. 494, 90 N. W. 147; Queen City Ins. Co. v. Basford, 27 S. D. 164; 130 N. W. 44; State v. Summers, 33 S. D. 40, 144 N. W. 730, Relator makes no claim that the laws in question in any manner conflict with the provisions of the federal Constitution.

Wherein do they conflict with the provisions of the above sections of the state Constitution? There is no claim that defendant has ever drawn, or that he threatens to draw any warrant upon either of these several funds except in pursuance of those provisions, of the particular act in question, which purport to set aside the said fund for certain specific purposes; therefore the sole question presented, as to each one of the acts before us is, "Do the words used therein amount to an *appropriation* for such specific purpose?" The Constitution in no manner prescribes what is necessary to constitute a valid appropriation. In this respect it differs materially from the Constitutions of some of the other states, wherein there are express provisions defining and limiting appropriations—such as, that they must be specific in amount or limited for a certain period of time. Webster defines "appropriation" as, "Act of appropriating something to a particular person or use." It is unnecessary for us to quote the provisions of these several acts. Relator does not contend but that

they show a clear intent, upon the part of the law makers, to appropriate the fund therein named to the particular use or uses therein stated; neither does he contend that they do not contain apt words showing such intent; in fact relator, in his brief, has failed to directly set forth what his contention herein is and we are left to arrive at his real contention through the necessary inference to be drawn from one single statement which he has quoted from an authority cited by him. This excerpt is from State v. Eggers, 29 Nev. 469, 91 Pac. 819, 16 L. R. A. (N. S.) 630, and is as follows: "As all appropriations must be within the legislative will, it is essential to have the amount of the appropriation, or the maximum sum from which the expenses could be paid, stated. This legislative power can not be delegated nor left to the recipient to command from the state treasury sums to any unlimited amount for which he might file claims * * * it is usual and necessary to fix a maximum." The only inference to be drawn is that relator attacks these acts because they do not limit the amounts appropriated to some fixed amounts—the only limitation in each law being the amount that may come into the fund. But as before noted, it will be seen that the Constitution does not provide that the appropriation shall be for a fixed sum; and conceding all that is announced in the above quotation, can it be said that an appropriation is not "within the legislative will," or that the Legislature has delegated "to the recipient to command from the state treasury sums to an unlimited amount," when the appropriation is limited to the amount of one special fund? The case before us is quite different in its facts from State v. Eggers, supra, where the attempted appropriation was from the general funds and, so far as the act was concerned, would permit of all the revenues of the state being used for the purposes mentioned in the act. The failure of the people to so restrict the Legislature so that its appropriations must be in some stated amount may be unwise, but it is clear that, if the Constitution does not place any restriction upon its power in this respect, the court cannot. Undoubtedly the leading authority upon the question of what is a valid appropriation under a Constitution is the case of Ristine v. State, 20 Ind. 328, wherein is to be found a discussion of the origin and history of the constitutional restrictions on appropriations of public funds. This case goes fully into the essen-

tials of a valid appropriation, and says: "An appropriation may be made in different modes. It may be made by an act setting apart and specially appropriating the money derived from a particular source of revenue to a particular purpose. Our swamp land act is of this character." The act so referred to is chapter 104, Revised Statutes, Ind. 1852, and, like the acts before us, appropriated all the moneys, received into the fund therein provided for, or so much thereof as should be needed, to the carrying out of the provisions of the act—there was no specific or definite amount appropriated. This law was sustained in Dodd v. Miller, 14 Ind. 433, and Lange v. Stover, 19 Ind. 175. In the latter case the court said: "But, we think, the statutes on the subject of swamp lands make an ample *appropriation* of the swamp land fund to the payment of legitimate claims against that fund. 1 G. & H., Stat., p. 597, et seq. These statutes not only make a sufficient appropriation of the funds to that purpose, but prohibit their diversion to any other. The auditor is authorized to draw his warrant, in a proper case, upon these funds, and no other or further appropriation is necessary than is found in the statutes above referred to. It is not disputed that the claim in this case was a legitimate one against the fund in question." In People v. Miner, 46 Ill. 385, a case wherein the amount appropriated was uncertain and indefinite, the court said: "There is no force in the objection that the appropriation is for no certain amount. Would it not be competent for the Legislature to appropriate to the construction of a bridge over a stream in any one county of the state, one-half the actual cost of the bridge, the amount to be ascertained by the county court? We see nothing contrary to the Constitution in such an enactment, however injudicious and ill-advised it might be. But this we do not deem as in any way maintaining the unconstitutionality of this act. It is not essential or vital to an appropriation that it should be of an amount certainly ascertained prior to the appropriation. There is no requirement of that kind in the Constitution. As a general principle, whatever our state Constitution does not prohibit, the general assembly may do. The command of that instrument would seem to be sufficiently regarded by the actual appropriation in pursuance of a law to that effect." In People v. Auditor, 9 Mich. 141, the court said: "The statute of 1853 (Comp. L. § 990), provides that

one-half of the taxes *received or which may be hereafter received* from the corporations referred to, shall be paid over to the treasurers of the counties from which they respectively *have been or may hereafter be received,* upon the written order of the county clerk of the proper county. This law is perfectly definite and unequivocal. It points out the mode of payment, and it appropriates all money received or to be received. If this had not already been done by the Constitution, a question we do not deem it necessary to pass upon, this statute is ample to serve as a standing appropriation."

It seems clear that, though it may be an unwise policy that has been pursued by the Legislature in placing in the hands of the executive officers of the state the expenditure of moneys unlimited in amount except as limited by the amount of the fund provided for, yet, if such legislation is unwise, the remedy must be sought from the Legislature itself or else through such amendments to the fundamental law as will restrict the legislative power.

Relator cites several cases in his brief. Not a one of them can be considered as an authority in support of his sole contention—the case of State v. Eggers, supra, for the reason hereinbefore mentioned; the other cases, for the reason that there were either other provisions of the statute that rendered the particular attempted appropriation invalid, or the constitution of the state contained provisions materially different from those of our Constitution, and such as to clearly render the attempted appropriation invalid.

The writ prayed for is denied.