Nos. 23,938, 23,939, 23,940, and 23,941.

UNION PACIFIC RAILROAD COMPANY et al., *Appellees,* v. THE COURT
OF INDUSTRIAL RELATIONS (THE PUBLIC UTILITIES COMMISSION
substituted), *Appellant.*

No. 23,942.

THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Ap-
pellee,* v. THE COURT OF INDUSTRIAL RELATIONS (THE PUBLIC
UTILITIES COMMISSION substituted), *Appellant.*

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW—*Statute Requiring Railroads to Make and Maintain
Cattle Guards at Farm Crossings is Constitutional and Valid.* Section 1 of
chapter 243 of the Laws of 1919, section 66-230 of the Revised Statutes of
1923, does not deprive railroads of their property without due process of
law, take their property for a private use without just compensation, or
deny them the equal protection of the law, in violation of the constitution
of the United States or of the state of Kansas.

Appeals from Shawnee district court; JAMES A. McCLURE and GEORGE H.
WHITCOMB, judges. Opinion filed March 8, 1924. Reversed.

*Fred S. Jackson,* and *William A. Smith,* both of Topeka, for the appellant.
*T. M. Lillard, Bruce Hurd, O. B. Eidson, Luther Burns,* and *John E. Dumars,*
all of Topeka, for the appellees.


The opinion of the court was delivered by

MARSHALL, J.: In these actions, the plaintiffs sued to set aside
and vacate an order of the court of industrial relations (succeeded
by the public utilities commission) made under section 1 of chapter
243 of the Laws of 1919, section 66-230 of the Revised Statutes,
directing each of the plaintiffs to construct and maintain cattle
guards at certain farm crossings over their railroads. Judgment was
rendered in favor of the plaintiffs, and the defendant appealed in
each case.

The cases were tried on the pleadings and an agreed statement
of facts. The agreed statement of facts reads as follows:

"1. The Public Utilities Commission is the successor to the Court of Indus-
trial Relations and is substituted as defendant.

"2. The land hereafter referred to was public land, and the right of way
of U. P. Railroad Company was granted to its predecessors by acts of con-
gress of July 1, 1862 (12 Stat. 489), and July 2, 1864 (13 Stat. 356), and its
railroad was constructed across Saline county, Kansas, and the land in ques-

tion in the years 1866 and 1867, and remains in its original location, and Union Pacific Railroad Company succeeded to all the rights of its predecessors.

"3. Frank Gehr, J. B. Debold, James Haley, and H. E. Winslow, the complainants before the Court of Industrial Relations, obtained title to their land in Saline county on both sides of the right of way after the Union Pacific railroad was constructed, and their buildings are so located with reference to each other and to highways as to bring them within the terms of chapter 243, Laws of Kansas, 1919.

"4. After the Union Pacific railroad was constructed, and about 1870, the predecessors in title te Gehr and Debold disputed the title of the railroad company to the right of way across their land, and to settle the dispute they executed their warranty deeds for a valuable consideration, conveying the right of way to that company.

"5. The Union Pacific Railroad Company has maintained a private crossing for each of said complainants and has maintained gates in its right-of-way fence for such crossings ever since the right-of-way fence was constructed, about the year 1870.

"6. The track of the Chicago, Rock Island & Pacific Railway Company runs parallel with the Union Pacific track and was constructed across the land now owned by J. B. Debold and Frank Gehr about 1887, and its right of way was duly obtained for a valuable consideration paid the then owners, and it has always had its track enclosed with a fence and has maintained gates therein, and has maintained a private crossing in line with the private crossings over the Union Pacific track for the use of Mr. Debold and Mr. Gehr. Their buildings are so located with reference to each other and to highways as to bring them within the terms of chapter 243, Laws of 1919.

"7. On the 31st day of July, 1920, complainants filed their separate complaints with the Court of Industrial Relations, asking for an order requiring the railroad companies to make and construct proper cattle guards on each side of the said private crossings as provided in said chapter 243. The court of Industrial Relations duly made orders as prayed, and these actions were duly brought by the railroad companies to set aside such orders."

The case turns on the validity of section 1 of chapter 243 of the Laws of 1919, section 66-230 of the Revised Statutes, which reads:

"When any railroad runs through any improved and fenced farm lands and between an occupied dwelling and other main farm buildings; or wherever at the time of the passage of this act, any railroad right of way lies alongside of and contiguous to a public highway through any improved and fenced farm land upon which is a dwelling actually occupied as a farm residence, and it is necessary for the occupants of said dwelling to pass across the right of way of said railroad in order to reach the main public highway or get to their farm lands to cross said railroad, then and in either case said railroad company shall, at the request in writing of the owner of such farm, make and maintain proper cattle guards on such railroad on both sides of the crossing so used for farm purposes. In case of the refusal of such railroad to construct and main-

Railroad Co. v. Public Utilities Commission.

tain such cattle guards within a period of thirty days after such request, the owner of such farm, shall have the right to apply to the public utilities commission for the state of Kansas for an order directing such railroad to construct such cattle guards, and the said public utilities commission shall have jurisdiction and authority to hear and investigate the question of the necessity for such cattle guards at such crossing. Such hearing and investigation shall be conducted by said public utilities commission in the same manner and upon the same notice as is provided in chapter 238 of the Laws of 1911 for the holding of hearings and investigations by said commission.

"In case such commission, after full hearing, shall find such cattle guards to be reasonably necessary for the use of the owner of such farm, such commission shall have power and authority to require by order said railroad to construct and maintain such cattle guards at such farm crossing, and to enforce such order in the same manner as other orders of the commission may be enforced under the provisions of chapter 238 of the Laws of 1911. And it shall not be necessary for the occupants of such land to keep the gates in the fences at such farm crossings closed where such cattle guards are installed: *Provided further,* That said railroad company shall not be responsible for damage done to stock at such crossing described under this act when the gates at such crossings are open."

The plaintiffs in effect contend that this statute violates the constitution of the United States and of the state of Kansas in that the statute and the order of the public utilities commission made thereunder deprive the plaintiffs of their property without due process of law, take their property for a private use without compensation, and deny to them the equal protection of the laws. The statute must be upheld unless it clearly violates some constitutional provision, state or national.

The state has power to legislate for the protection of the lives of railroad employes and of passengers on railroad trains. If this statute reasonably tends to accomplish either or both of those purposes, it must be upheld. In *Mo. Pac. Rly. Co. v. Harrelson,* 44 Kan. 253, 255, 24 Pac. 465, this court, in discussing a law requiring railroads to fence their right of way, said:

"The claim is first made that the statute in question is unconstitutional and void for the reason that it simply requires railroad companies to fence their roads through lands inclosed by a lawful fence; that it is for the benefit of the land-owners alone. This is not the only object of the law. Animals straying upon a railroad track is one of the recognized sources of danger to travel, and, with the increased speed of railroad trains, experience amply demonstrates the necessity of inclosing railroad tracks through inclosed fields, as well as elsewhere, with good and sufficient fences; and to insure safety and protection to the traveling public, all these necessary precautions are demanded. It is not the land-owner alone who is benefited. The railroad com-

pany in obeying the law, protects its passengers and its property interests as well. The protection is threefold. We place the validity of this law upon the broad ground of protection to the passengers who intrust themselves to the care of the railroads. It is the duty of these corporations to give to those who travel in their cars increased safety of life and limb. If, in the judgment of the law-making power of the state, this can be done by requiring railroad companies to fence their roads, it is but reasonable and within the power of the state, and they should comply with the legislation. Incidentally, the property of the road is protected, as well as the stock of the adjoining owner. In the exercise of the ordinary police powers of the state, it has been held reasonable to require railroads to fence their tracks, not alone for the protection of the live stock of the abutting owners. Indeed, the chief object of the statute is the protection to the traveling public against accidents occurring through collision of trains with cattle; and one exercise of the power to require railroad companies to fence their tracks does not preclude a second regulation of the same kind, providing for other and different fences."

A portion of this language was repeated in *Mo. Pac. Rly. Co. v. Eckel,* 49 Kan. 794, 31 Pac. 693.

At much used private railroad crossings, where gates are maintained without cattle guards, the gates are often left open and domestic animals frequently enter upon and wander along fenced railroad right of way, thereby endangering the lives of trainmen and railroad passengers. Where gates are infrequently used, the danger is much decreased. A private railroad crossing may be used more than a crossing at a public highway where cattle guards are properly and legally required. The danger to trainmen and passengers would then be greater at the private crossing than at the highway crossing.

Cattle guards are dangerous to passing trains. A cattle guard may be more or less dangerous than domestic animals passing through an open gate to a private crossing and from there straying upon the right of way. But the greater danger may be from the frequency of domestic animals on the right of way. The legislature has the power to say that cattle guards shall be maintained wherever, in its judgment based upon reasonable grounds, the danger from live stock passing through an open gate at a private crossing is greater than will be caused by cattle guards at such crossing.

But the legislature is not and cannot be informed where such conditions exist. For that reason, the legislature left to the public utilities commission the power to say where the dangerous condition exists and to order the cattle guards constructed. That is what was done by the legislature in enacting the law.

Railroad Co. v. Public Utilities Commission.

The plaintiffs cite *Chamberlain v. Railway Co.,* 107 Kan. 341, 191 Pac. 261, where the court said:

"Where a railway company acquired a right of way across a farm in 1885, and at that time paid the owner the full compensation for all the damages, matured, continuing and prospective, which he thereby sustained, the railway company cannot be compelled, under a statute enacted many years later, to furnish a crossing over the railway and to construct it at its own expense to connect the two parts of the farm divided by the railway, since such an application of the after-enacted statute would deprive the railway company of its property without compensation, and deny to it that equal protection of the law which is guaranteed by both the state and federal constitution."

In that case, sections 66-301, 66-302, and 66-303 of the Revised Statutes were involved. They read:

"Whenever any railroad, either steam or electric, shall run through any farm so as to divide it, such railroad at the request of the owner of such farm, shall construct, keep and maintain a crossing either on, over or under such railroad track, at some convenient place, which crossing shall be so constructed as to permit ready and free crossing thereon by animals, farm implements and vehicles."  (66-301.)

"That through the fences on either side of the right of way of such railroad, at such crossing, such railroad shall construct, keep and maintain gates so as to permit the passage of animals, farm implements and vehicles." (66-302.)

"If upon such request being made, such railroad shall fail, neglect or refuse to construct such crossing and gates, or to keep the same in repair, then the owner of such farm may, by appropriate action, compel such railroad to so construct keep and maintain such crossing and gates, or such owner may construct or repair such crossing and gates, and then collect from such railroad the cost thereof."  (66-303.)

The difference between *Chamberlain v. Railway Co.,* supra, and the present case is that the statute in the former case had nothing in it that could be construed as tending to promote the safety of trainmen or passengers while the statute in the present case does tend to promote such safety.

Section 1 of chapter 243 of the Laws of 1919, section 66-230 of the Revised Statutes, does not violate any provision of the constitution of the United States or of the constitution of the state of Kansas.

The judgment is reversed, and judgment is entered in favor of the defendant in each case.

Dawson, J., dissenting.