MUNDELL, Respondent, v. GRAPH, et al, Appellants.

(256 N. W. 121.)

(File No. 7677. Opinion filed July 30, 1934.)

*Walter Conway,* Attorney General, and *Herman L. Bode,* Assistant Attorney General, for Appellants.

*John T. Heffron,* of Deadwood, for Respondent.

CAMPBELL, J. Chapter 61, Laws South Dakota 1927, is commonly known as the Barber Act, and is entitled as follows: "An Act Entitled, An Act Regulating the Practice of Barbering, Defining Such Practice, Providing for a Board of Examiners and the Issuance of Certificates to Practice Barbering, and Providing Penalties for Violation."

Plaintiff resides in Deadwood in Lawrence county in this state, where for twenty-six years last past he has been engaged in the occupation of a barber, and where he continues to own, operate, and conduct a barber shop. When chapter 61, Laws 1927, went into effect plaintiff complied with all the requirements of the act and of the barber board and paid all fees ($12) to entitle him to receive, and he did receive, a certificate as a registered barber pursuant to the provisions of the act.

Sections 14 and 17 of the original Barber Act (subsequently slightly modified by chapter 209, Laws 1931, in a fashion in no manner material to the decision of this case) are, respectively, as follows:

"Renewal and Restoration of Certificates. Every registered barber and every registered apprentice who continues in active practice or service, shall annually, on or before July 1, of each year, renew his certificate of registration and pay the required fee. Every certificate of registration which has not been renewed during the month of July in any year shall expire on the first day of August in that year. A registered barber or a registered apprentice whose certificate of registration has expired may have his certificate restored immediately, upon payment of the required restoration fee. Provided, however, that no certificate shall be renewed until the applicant shall have presented to the Board a certificate of health from a regularly licensed practicing physician, showing that such applicant is free from any infectious or contagious disease. Said certificate of health shall bear date of issue not more than ten days prior to date of application. * * *

"Fees. The fee to be paid by an applicant for an examination to determine his fitness to receive a certificate of registration to practice barbering is Ten Dollars ($10.00) and for issuance of the certificate Two Dollars ($2.00).

"The fee to be paid by an applicant for an examination to determine his fitness to receive a certificate of registration to prac-

tice as an apprentice is Five Dollars ($5.00) and for the issuance of the certificate One Dollar ($1.00).

"The fee to be paid for the renewal of a certificate of registration to practice barbering is Five Dollars ($5.00) and for the restoration of an expired certificate is Seven Dollars ($7.00).

"The fee to be paid for the renewal of a certificate of registration to practice as an apprentice is Three Dollars ($3.00) and for the restoration of an expired certificate is Five Dollars ($5.00)."

Although plaintiff complied with the requirements of the statute at its inception and secured his certificate of registration, he did not, during or prior to the month of July, 1928, secure a renewal of such certificate, nor has he since done so, although he has at all times continued in his occupation of barbering.

After August 1, 1933, the board of barber examiners was insisting that plaintiff procure the renewal or restoration of his certificate if he continued to engage in the occupation of barbering and informed plaintiff (and others) that, if he continued in said occupation without procuring the restoration of such certificate, the board would cause proceedings to be instituted against him for unlawfully engaging in such business.

The barber board does not appear to be demanding that plaintiff, in order to secure a restoration of his certificate, retake the examination provided for in section 9 of chapter 61, Laws 1927, as amended by chapter 209, Laws 1931, but is demanding that plaintiff pay certain fees as a condition precedent to the restoration of his certificate. Whether the total fees demanded amount to $14 or $19 is not entirely clear upon the record before us, nor is it entirely clear as to just how or upon what theory the barber board proceeds in computing the amount demanded. Plaintiff, however, does not seek to raise those precise questions in this case, and we need not here determine whether the amount demanded by the board from this plaintiff is the proper amount to be exacted under the law for the renewal of certificate of a barber who, though once registered, has continued meantime to practice barbering in this state for a period of several years without certificate. We mention the matter only to point out that we do not mean to pass directly or indirectly by any language in this opinion upon

the question of whether the demanded fee is or is not correct in amount.

Plaintiff, as we have said, raises no question as to the amount of fee demanded. Neither does he claim that the board is requiring of him any fact showing that he is unable or unwilling to make with reference to his skill, experience, physical health, moral character, or otherwise. He refuses to procure the restoration of his certificate solely and entirely upon the broad ground that the whole Barber Act is unconstitutional, and that he is entitled as of right to engage in the occupation of barbering in this state without complying with the requirements of said act or any part thereof.

Under those circumstances, plaintiff refusing to comply with the act because he claimed it unconstitutional in toto and the board threatening to cause proceedings to be instituted against him for violation of the act, plaintiff commenced the present action asking that the state barber board and the state's attorney and sheriff of Lawrence county be permanently enjoined from enforcing the provisions of the Barber Act and from interfering with or arresting this plaintiff on account of his noncompliance therewith.

To plaintiff's complaint defendants demurred on the ground that it did not state facts sufficient to constitute a cause of action. This law issue coming on for disposition below, the learned trial judge, after hearing argument, duly made and entered an order overruling the demurrer, from which order the defendants have now appealed.

■ While it is true as a general rule that the validity of a statute creating a criminal offense cannot be determined by enjoining the commencement of a prosecution thereunder, nevertheless appellants appear to concede in the instant case that upon the allegations of the complaint respondent is entitled to at least a portion of the injunctive relief sought if the Barber Act be held unconstitutional. Cf. Joseph Triner Co. v. Shanks [1921] 43 S. D. 528, 180 N. W. 955; Minneapolis Brewing Co. v. McGillivray (C. C. 1900) 104 F. 258; Knight v. Johns [1931] 161 Miss. 519, 137 So. 509. Both parties devote their briefs entirely to the matter of the constitutionality of the Barber Act, and we therefore pass directly to that question.

■ In this, as in every other case involving the constitutionality of legislative action, all reasonable intendments must be in-

dulged in favor of the statute, which should be upheld unless its infringement of constitutional restrictions is so plain and palpable as to admit of no reasonable doubt. State ex rel Botkin v. Welsh (1933) 61 S. D. 593, 251 N. W. 189.

Respondent in his brief outlines his attack upon the statute in the following language:

"Respondent challenges the validity of the law on various grounds which are as follows:

"1. The act is invalid as it attempts to gain its legality as a measure authorized under the police power when in truth and in fact, it is not a measure entitled to be characterized as a police power law for its terms do not include any provisions necessary or needful for the proper protection of the health of the people of South Dakota.

"2. The act bears no such relation to the public health as will sustain it as a police or sanitary measure.

"3. The practice of barbering insofar as the public welfare and comfort outside of and beyond what is included in its claimed health and safety provisions, are so insignificant as not to lend color to any right claimed under the police power of the State as shown by the terms of the Act itself.

"4. That the Barber Board under the Laws is not needful or necessary as the State, County, City and Town Boards of Health have full jurisdiction over barbers and barber shops and the law is not necessary as a sanitary or health measure.

"5. That the Barber Act violates section eight (8) and section nine (9) of article Eleven (11) of the Constitution of the State of South Dakota in that it is provided that no tax shall be levied except in pursuance of a law which shall distinctly state the object of the same to which the tax only shall be applied and that the tax levied and collected for State purposes shall be paid into the State Treasury.

"6. That said act violates section Two (2) of article Eleven (11) of the Constitution of the State of South Dakota in this that said tax is in violation of the provision that a tax may be levied for a public purpose while the law on its face shows its purpose is a private one for the establishing of a barber commission and the payment of compensation to the members thereof and no necessary or needful service being performed for the public.

"7. The Law grants arbitrary and capricious power to the Board of Barber Examiners and is in no way needful to protect the public health.

"8 That said act violates section Two (2) of article Eleven (11) of the Constitution of The State of South Dakota, in that it exempts certain persons of the same calling, making the tax unequal and not uniform and therefore said act is class legislation and void.

"9. The act makes the Board of Barber Examiners judge, jury, prosecutor and from its decision no appeal is provided for and therefore its provisions violate sections one (1) and two (2) of article six (6) of the Constitution of the State of South Dakota and section 1 of article fourteen (14) of the Constitution of the United States of America.

"10. That the fee to be paid is a license tax and not a mere license and is levied by the State and collected not by the State but by the Barber Board and said Board is not required to account to any public official, but is merely required to report to the Governor. No limit is placed on the Board. The more barbers the more money for the Board to handle as its members please without limit.

"11. That section sixteen (16) of the Barber Act violates section one (1) and two (2) of article six (6) of the Bill of Rights of the Constitution of the State of South Dakota and section 1 of article Fourteen (14) of the Constitution of the United States of America in that it attempts to deprive citizens of South Dakota of life, liberty and property without due process of law."

With reference to respondent's contentions numbered 5, 6, 8, and 10, which attack the validity of the law if it be viewed as a tax measure, it needs only to be said that the Barber Act is not and does not purport to be a law for the raising of public revenue. As we had occasion to point out in State ex rel Botkin v. Welsh, supra, while border line cases may present difficulties, nevertheless the broad distinctions between an exercise of the police power and an exercise of the taxing power are very plain. That the statute before us is most inartistically drawn and that it is extremely difficult to reconcile many of its provisions in matters of detail and particularly matters of administration is undoubtedly true, as we have heretofore said in Curran v. Bowell (1928)

53 S. D. 92, 220 N. W. 455. Conceding that the legislative intent as to the precise measure and manner of regulation of barbering is not always clear, nevertheless, viewing the statute in its entirety, it is plain beyond possibility of controversy that the statute was intended to be and is an exercise of the police power and not of the taxing power. The situation is in all respects antithetical to that presented to this court (State v. Doran [1912] 28 S. D. 486, 134 N. W. 53), where a statute (section 19, c. 176, Laws 1903) requiring the payment of an annual fee of $500 by an itinerant physician was held to be an occupation tax and not a license fee exacted in connection with and as ancillary to a regulatory exercise of police power. In the Doran Case the payment of the annual fee of $500 gave the applicant (who of course must be a licensed physician) the right to carry on the business or occupation of "itinerant physician" without the performance of any further conditions whatsoever. In the instant case the fees paid are intended to cover the actual expenses of conducting examinations, issuing licenses, making inspections, and controlling the occupation affected, and it is not pleaded, nor does it appear from the face of the statute, that the fees exacted thereunder will produce or are producing any sum appreciably in excess of that reasonably necessary for the administration of the act. It is too obvious to require extended discussion that the fundamental purpose and object of the statute is not to raise revenue for public use, but to regulate and control the business or occupation of barbering. Constitutional restrictions applicable solely to the legislative exercise of the taxing power are not pertinent here.

That the business of barbering so directly affects the health and welfare of the public as to be subject to control and regulation under the police power appears universally to be held, so far as we have been able to discover, in every state where the question has been presented. See comprehensive annotation and collection of cases, 20 A. L. R. 1111. Indeed respondent himself concedes this to be true in the present case. In this connection, however, respondent urges an argument which may best be indicated by quoting from his brief as follows:

"This appeal is taken by appellants and the entire brief of appellants is devoted to whether or not the authority is vested in the legislature under its broad police power to pass such an act.

Respondent admits that the Legislature may pass such a law under its police power, providing, however, the law is necessary and needful for the public health, sanitation and welfare, but contends that the act must in itself be a health or sanitation or welfare law and must contain provisions within its enactments that clearly show it to be such a law. This barber act, respondent contends, does not meet this requirement and has for its purpose of creation of jobs for three barbers, unskilled in medicine, health regulations, sanitation or other required education to aid the public or the barbers. In other words, some of the barbers of South Dakota wanted a barber law. The legislature gave them what they wanted. The barbers pay the money. The Barber Board collects the money and the Barber Board spends the money. The Barber Board examines the barbers. The Barber Board tries the barbers and the Barber Board has full right and authority to act as judge, prosecutor, jury and witnesses. Nothing in the law that puts one cent in the State Treasury; no accounting is made. The Barber Board must make a report to the Governor. When the Barber Board shall work, the number of days, the miles and the mileage, etc., shall be determined by the sweet will of the same Barber Board. On the other hand, what does the Barber Board do for the barbers of the State? And what for the public? Surely they collect the fees and pay their own salaries, mileage, per diem, and arrest and convict other barbers if they refuse to pay the fee. It is idle to say the three ordinary Barber Board members are in a position to promote the health, sanitation or welfare of the people of this State. The only thing in the act that squints at a health regulation is the provision which reads as follows:

" 'The board shall have authority to make reasonable rules and regulations for the provisions of this Act and prescribe sanitary requirements for barber shops and barber schools, subject to the approval of the State Board of Health, and any member of the Board or its agents or assistants shall have authority to enter upon and to inspect any barber shop or barber school at any time during business hours. A copy of the rules and regulations of the Board shall be furnished by the Board to the owner or manager of each barber shop and barber school, and such copy shall be posted in a conspicuous place in such barber shop or barber school.' Thus it will be seen that the State Board of Health, an institution long in

existence with full power to regulate, control and protect the sanitation and health of the public in and out of barber shops and barber schools, was in existence long before this Barber Board Act and the State, County, City and Town Boards of Health can far better regulate barber shops all over the State than can one high salaried and two per diem and mileage consuming barbers. With this statement of the position of respondent we contend that the South Dakota State Barber Act does not meet the requirements necessary to make it a valid police power enactment. If it is not then it must fall of its own weight."

█ If it be once conceded that the business or occupation of barbering is a proper field for the exercise of the police power and that the classifications made by the Legislature are reasonable, then what the Legislature sees fit to do by way of regulation and control lies very largely in the legislative discretion so long as its requirements are not unreasonable or arbitrary. Cf. State ex rel Sharpe v. Smith (1931) 58 S. D. 22, at page 54, 234 N. W. 764. It is not material, even if it should be conceded to be true, that the public health and welfare might have been better served by establishing different requirements or by placing the regulation and control of the barbering business under the supervision of some other or different board, body, or person. Methods, requirements, and machinery are for the Legislature up to the point of unreasonable or arbitrary action.

The views urged by respondent have neither the charm of novelty nor the claim to deferential consideration which might arise from previous judicial approval. An examination of the many cases cited in the note to which we have previously referred (20 A. L. R. 1111) will disclose that many states have enacted statutes similar in general scheme and structure to our own. Against these statutes these same arguments have been often advanced and as many times rejected by the courts. In addition to the cases found in the annotation, see, also, Banghart v. Walsh (1930) 339 Ill. 132, 171 N. E. 154; Knight v. Johns (1931) 161 Miss. 519, 137 So. 509; State v. Lockey (1930) 198 N. C. 551, 152 S. E. 693; State ex rel Melton v. Nolan (1930) 161 Tenn. 293, 30 S. W. (2d) 601; Gerard v. Smith (Tex. Civ. App. 1932) 52 S. W. (2d) 347. The only authority to which respondent points as sustaining his contentions to any considerable degree is the dissenting opinion of

Rudkin, J., in the case of State v. Walker (1907) 48 Wash. 8, 92 P. 775, 15 Ann. Cas. 257. With reference to that opinion these observations may be pertinent: First, it did not receive the approval of any of the other six justices of the Washington court at the time it was promulgated, and in the twenty-seven years that have since elapsed it has not appeared to receive the approval of any other court. Second, a reading of this dissenting opinion indicates that it is based in very large part upon an opinion by Justice Rudkin written about a year earlier in the case of State ex rel Richey v. Smith (1906) 42 Wash. 237, 84 P. 851, 5 L. R. A. (N. S.) 674, 114 Am. St. Rep. 114, 7 Ann. Cas. 577, wherein he expressed the view of the court holding unconstitutional a law for the regulation and licensing of plumbers. It would seem that the majority of the court were quite correct in the Walker Case in pointing out that there is an appreciable lack of analogy between the situations of the plumber and the barber. Furthermore, the holding of State ex rel Richey v. Smith, even as applied to the licensing and regulation of plumbers, has since been expressly overruled and repudiated by both departments of the Washington Supreme Court. City of Tacoma v. Fox (1930) 158 Wash. 325, 290 P. 1010; Lund v. Bruflat (1930) 159 Wash. 89, 292 P. 112. Third, if (as appears to be the case) the author of the dissenting opinion in the Walker Case is the same jurist who, as United States Circuit Judge, concurred in the decision of the case of Marx v. Maybury (D. C. 1929) 36 F. (2d) 397, it seems reasonable to assume that he has appreciably changed his views since the time when he wrote his dissent in the Walker Case.

██ The statute here involved contains a "saving clause" (section 23) similar to that considered in the case of State ex rel Botkin v. Welsh (1933) 61 S. D. 593, 251 N. W. 189, at page 215, providing that partial invalidity shall not destroy the act. Many of the objections urged by respondent he is not in position to present in this case, and it is not here necessary for us to examine and review every section or every clause of the statute and determine the individual validity thereof. Conceivably various provisions of the law might be held unconstitutional and yet the act could stand as a whole. The validity of specific portions of the act will be reviewed by this court if and when they are presented here by a person who is being adversely affected by them. Respondent has

642

already done everything the act requires to entitle him to his certificate save only to submit proof of his present freedom from infectious and contagious disease and pay a fee. He makes no allegation that either of those two requirements is in itself unreasonable or arbitrary or unconstitutional, and he must therefore stand or fall on the proposition that the statute is so infirm as to be entirely invalid. Whether every specific provision of the statute is in all respects valid and enforceable according to the terms thereof we have made no investigation and we do not undertake to determine in this case. We are satisfied that the act is an exercise of the police power and that the business or o ccupation of barbering is subject to regulation and control under the police power and that, after eliminating all portions of the act, the validity of which might be at all questionable, a complete workable and constitutional whole would remain which would have to be sustained in the light of the legislative declaration as to its intention in case of partial invalidity. That being true, the present attack upon the statute by this respondent, which is bottomed upon establishing invalidity so extensive as to destroy the whole law, must fail.

The order appealed from is reversed.

All the Judges concur.