BERENS, Respondent v. C. M. ST. P. & P. R. R. CO., Appellant

(120 N.W. 2d 565)

(File No. 10019. Opinion filed March 29, 1963)

Dwight Campbell, Stanley R. Voas, Aberdeen, for Defendant and Appellant.

Agor, Bantz, Siegel & Barnett, Aberdeen, for Plaintiff and Respondent.

HOMEYER, J. The constitutionality of certain railroad fencing statutes and the constitutionality of certain statutory rules of evidence pertaining to livestock killed or injured by a railroad due to failure to properly fence its right-of-way against livestock is the subject of this appeal. It is contended that these statutes are violative of the United States Constitution, Amendment Article 14, § 1, and the South Dakota Constitution, Article VI, § 18, and deny railroads equal protection of the laws. The thrust of appellant's argument is that when these statutes were originally enacted railroads had a virtual monopoly on passenger and freight transportation; that the court should take judicial notice that conditions have changed and that such monopoly no longer exists; that passenger transportation by rail has virtually disappeared and that railroads now transport less than one-half of the nation's freight. It is contended that motor carriers are not subject to the same statutory provisions and that as a result in the highly competitive field of transportation, there is unjust and unwarranted discrimination.

From stipulated facts it appears that respondent's 320-acre farm adjoins appellant's right-of-way; there is an 80-acre tract with buildings lying east of a north-south township road; the railroad right-of-way is the south boundary of this tract; on the north side of this 80-acre tract is a 20-acre pasture and the area between the pasture and the right-of-way is cropland. Respondent maintained a good permanent fence on all sides except the side abutting the railroad. At one time appellant maintained a good fence along this right-of-way, but it permitted the fence to go into disrepair and a portion was removed entirely. Respondent had an electric fence along the south side of his pasture area and during the night his cattle got through the electric fence, travelled across the cropland and onto appellant's right-of-way. Three cows were killed and one injured by appellant's train. The amount of the damages was stipulated to be $875.55. Appellant filed a motion to dismiss which was denied and the court entered judgment against appellant for the stipulated amount. The motion raises the constitutionality of the statutes hereinafter discussed. No other matters urged in the motion and assigned as error require discussion.

The railroad fencing statutes were first enacted in 1883,

Chapter 57 of the Session Laws of that year, and have been retained in subsequent recodifications and now appear in substantially the same form in the following sections of the South Dakota Code of 1939:

SDC 52.0910. "Whenever the owner of any tract of land abutting upon any line of railroad within this state shall desire to inclose any such tract of land for pasturage or farm purposes, and shall construct a good and sufficient fence about such tract on all sides except along the side abutting upon such railroad, it shall be the duty of such railroad company to construct a fence not less than four and one-half feet high, and if the owner inclose any such tract of land for pasturage or farm purposes with a woven wire fence with wires crossing each other close enough to keep sheep and hogs therein, it shall be the duty of such railroad company to construct a like fence along its right of way on the side of such tract so far as the same extends along the line of such railroad, and to maintain the same in good repair and condition until released therefrom by the owner of such tract, or until the owner of such tract shall have ceased to maintain in good repair and condition for the term of one year his portion of the fence around such inclosure."

SDC 52.0911. "Whenever the owner of any tract of land shall have completed his portion of the fence about such proposed inclosure, he shall give written notice of its completion to the railroad company upon whose line such tract is situated, by personal service upon the agent of such company at the station nearest the proposed inclosure, describing in such notice the situation of such tract and the number of acres to be inclosed, as near as may be, and the length of the fence required along the line of such railroad to complete the proposed inclosure.

"It shall be the duty of the railroad company to construct and complete its portion of such fence within sixty days after the service of such notice."

SDC 52.0912. "If any railroad company shall neglect or refuse to comply with any of the requirements of sections 52.0910 and 52.0911, it shall be lawful for the owner of such tract to construct or repair the fence along the line of such railroad, and the railroad company shall be liable to the owner thereof, to an amount not exceeding one dollar and twenty-five cents per rod, to be recovered in a civil action; and such railroad company shall be liable for all damages accruing by reason of such neglect or refusal."

The general fencing evidentiary statute was enacted in 1907, Chapter 218, Session Laws of that year. The double damage provision was declared unconstitutional, Polt v. Chicago M. & St. P. Ry. Co., 1914, 26 S.D. 378, 128 N.W. 472, 232 U.S. 165, 34 S.Ct. 301, 58 L.Ed. 554; Halseth v. South Dakota Central Ry. Co., 1914, 34 S.D. 226, 147 N.W. 992. The same statute was subsequently re-enacted with the double damage provision deleted and now appears in the South Dakota Code of 1939 in the following form:

SDC 52.0943. "Any corporation operating a railway and failing to properly fence the same against livestock and keep the same in repair and maintain proper and sufficient cattle guards at all points where the right to fence or maintain cattle guards exists, shall be liable to the owner of any stock killed or injured by reason of the want of such fence or cattle guard, for the full amount of the damage sustained by the owner on account thereof, unless it was occasioned by his act or that of his agent; and to recover the same it shall only be necessary for him to prove the loss or injury to his property. No law of the state or any local or police regulation of any county, township, city, or town relating to the restraint of domestic animals, or in relation to the fences of farmers or landowners, shall be applicable to railway tracks unless specifically so stated in such laws and regulation.

"Upon depot grounds necessarily used by the public and the corporation, the operating of trains at a greater rate of speed than eight miles an hour where no fence is built shall be negligence, and shall render such cor-

poration liable for all damages occasioned thereby in the same manner and to the same extent, as in cases where the right to fence exists."

The prima facie evidence of negligence statute appears in § 679, Civ.Proc.Dak.Rev. Code 1877, and was continued in later codes in substantially identical form and now reads as follows:

SDC 1960 Supp. 37.2302. "The killing or injuring of livestock by such railroad corporation, its agents, or employees shall be prima facie evidence of the negligence of said corporation."

Where the railroad has voluntarily constructed the right-of-way fence as required by SDC 52.0910, the giving of notice to construct is an idle act, and when it permits such fence to go into disrepair, it cannot rely on a failure to give notice as a bar to liability. Wold v. South Dakota Central Ry. Co., 23 S.D. 521, 122 N.W. 583.

Until now the constitutionality of the fencing statutes, SDC 52.0910-52.0912, despite their long history as a part of our substantive law has never been questioned and despite a mass of early decisions by this court on liability of railroads for injuries to livestock on their right-of-way. These statutes make it the positive duty of the railroad at its expense to construct and maintain a fence along the fourth side of an enclosure bordering its right-of-way when the landowner has at his expense constructed a good and sufficient fence on the other three sides. The statutes fix the standard of care and a failure to comply with the statutory duty constitutes negligence and liability can only be avoided by showing that the violation was excusable or justified. Albers v. Ottenbacher, 79 S.D. 637, 116 N.W.2d 529. We find nothing in the stipulated evidence to show justification or excuse for non-compliance. If these fencing statutes are constitutional, the judgment must be allowed to stand.

It does not require any lengthy citation of authority to show that in the exercise of their police power state legislatures have the power to pass laws requiring railroads to construct and maintain fences as a safety measure and for the good and welfare of the public, and courts have consistently so held. 16A

C.J.S. Constitutional Law § 641, p. 905; 44 Am.Jur., Railroads, § 153, p. 368; Mo. Pac. R. Co. v. Humes, 115 U.S. 512, 6 S.Ct. 110, 29 L.Ed. 463; Union P. R. Co. v. Court of Industrial Relations, 115 Kan. 545, 224 P. 51; Mpls. & St. L. R. Co. v. Emmons, 149 U.S. 364, 13 S.Ct. 870, 37 L.Ed. 769; Mo. Pac. R. Co. v. Harrelson, 44 Kan. 253, 24 P. 465; Middaugh v. Chicago & N. W. R. Co., 114 Neb. 438, 208 N.W. 139. Appellant does not seriously challenge these holdings and admits that such statutes when originally enacted were constitutional, but vigorously maintains that conditions have changed since their enactment and that changed conditions have now made them unconstitutional. Because motor carriers do not have like obligations or restrictions, it is urged appellant is denied constitutional equality of protection under the law. It is also urged that railroads are subjected to obligations different from those of other adjoining landowners under Chapter 19.01, South Dakota Code of 1939, General Fencing Regulations, and SDC 37.2401 et seq., the livestock trespass statutes. This may be true, but where the legislature exercises its police power, and a classification is made that is reasonable and not arbitrary, there is no denial of equal protection of the laws. Anderson v. Russell, 64 S.D. 436, 268 N.W. 386; Mundell v. Graph, 62 S.D. 631, 256 N.W. 121; City of Sioux Falls v. Kadinger, 74 S.D. 217, 50 N.W.2d 797.

The constitutionality of the evidentiary statute, SDC 52.0943, was before this court in Jensen v. South Dakota Central Ry. Co., 25 S.D. 506, 127 N.W. 650, 35 L.R.A.,N.S., 1015, Ann.Cas.1912C, 700, which at that time included the double damage provision, not here material. It was said:

"It seems to be generally held that such statutes are valid and within the proper exercise of the police power by a state Legislature, and are not in conflict with the federal or state Constitutions on the ground that the railway companies are thereby deprived of their property without due process of law, or that they are denied equal protection under the law. * * * Atchison, Topeka & Santa Fe Ry. Co. v. Mathews, 174 U.S. 96, 19 Sup.Ct. 609, 43 L.Ed. 909. The exercise of the police power in this class of cases is based upon the ground that, where persons are engaged in a calling or business attended with

danger to other persons and their property, then the Legislature may step in and impose conditions upon the exercise of such calling or business for the general good and welfare of society, and may prescribe the terms on which such dangerous calling or business will be permitted to be carried on by persons in charge thereof, whether such persons happen to be private individuals or railway corporations. The fact that such legislative exercise of the police power applies alike to all persons and all corporations engaging in such dangerous calling or business relieves it from the charge and contention that there is a denial of equal protection under the law by reason of such enactments. From the adjudicated cases it is evident that the fourteenth amendment to the Constitution of the United States does not limit the exercise of the police power of the state for the protection of its citizens. That this power should be applied to railway corporations is reasonable and just."

■ ■ SDC 1960 Supp. 37.2302 making the fact of killing or injury of livestock by a railroad prima facie evidence of negligence is a statutory rule of evidence. It is within the power of the legislature to provide that the proof of one fact shall constitute prima facie evidence of the main fact in the issue and is one of the general powers of government. It does not deny equal protection of the law or fail in due process because it creates a presumption of liability since it only supplies an inference as to liability in the absence of other evidence contradicting such inference. It is merely a rule changing one of the burdens of proof within the power of the legislature. I Wigmore, Evidence, 3d Ed., § 7; IV Wigmore, Evidence, 3d Ed., § 1356; Mobile J. & K. C. R. Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78, 32 L.R.A., N.S., 226, Ann. Cas. 1912A, 463; Huber v. Chicago M. & St. P. Ry. Co., 6 Dak. 392, 43 N.W.819.

■ ■ The appellant's liability was submitted to the trial court on the basis of applicability of all of the fencing statutes set out at length above. If constitutional, the judgment can be sustained without consideration of the evidentiary statutes. Contrary to the usual practice on constitutional questions, we have

elected to consider all of these statutes in the disposition of this appeal, since all were before the trial court and all were briefed and argued in this court. We also take judicial notice of a substantial change in transportation facilities, volume and methods employed by common carriers since enactment of these statutes.

We now consider appellant's contention that because of changed conditions there exists such discrimination between railroads and other carriers of freight and passengers so as to render these statutes unconstitutional. A statute valid when enacted my become invalid by a change in conditions to which it originally applied. Nashville, C. & St. L. Ry. Co. v. Walters, 294 U.S. 405-434, 55 S.Ct. 486, 79 L.Ed. 949. This proposition is approached with a presumption in favor of validity. Statutes should not be declared unconstitutional unless their infringement on constitutional rights leaves no reasonable doubt. Wickhem v. City of Alexandria, 23 S.D. 556, 122 N.W. 597; State ex rel. Longstaff v. Anderson, 33 S.D. 574, 146 N.W. 703. The determination of the question of classification is primarily for the legislature and the courts will not interfere unless the classification is clearly arbitrary and unreasonable. State v. Black Hills Transportation Co., 71 S.D. 28, 20 N.W.2d 683. In other words there must be a reasonable basis to justify legislation which applies to railroad companies and not to motor carriers of freight and passengers travelling over public highways.

It is our opinion that a reasonable basis for such distinction exists. Motor carriers and railroads are engaged in the same general business, yet the methods and means by which they perform their functions are far different and the legislature is acting within its prerogative to separate them into classes for regulation. Railroads are quasi-public corporations. In their origin, many received land grants and other aids in construction. They are given the power of eminent domain. They own the right-of-way over which they operate and the tracks on which their trains run. Their lines in many instances traverse fields at angles and divide fields and pastures. They have the right to construct spur tracks and condemn private property for such purpose to aid their business. Motor carriers too are subject to many regulations not

required of railroads and a large segment of our statutory and administrative law applies to them as a separate class. For the most part they operate on public highways. They are limited in size and weight. They are required to carry various types of insurance as a protection for their customers. Seasonally, their weight loads are drastically limited and in some instances, their normal routes are changed and they are denied the use of certain highways. They must obtain permits to operate and the area of their operation is restricted. Such permits are subject to cancellation for non-compliance with statutory and administrative regulations. They may be limited as to commodities they can transport. Laws restrict their speeds and impose other safety restrictions. They are required to pay special compensation taxes for use of public highways. Others could be mentioned. These regulations are not imposed on these carriers because of the same general business in which they are engaged but because of the means and methods by which they perform such business. State legislatures and the federal congress have long recognized railroads as a class by enacting special laws protecting their employees. As to such employees, defenses of contributory negligence, assumption of risk, fellow-servant rule, and others, have been limited or abolished. Railroads are required to maintain flagmen, crossing signals, and many other safety devices.

Counsel for both appellant and respondent have ably briefed their respective positions and the available case law on the question involved. We will briefly discuss these cases.

The Florida court, Atlantic Coast Line R. Co. v. Ivey, 1941, 148 Fla. 680, 5 So.2d 244, 139 A.L.R. 973, declared unconstitutional certain fencing statutes quite similar to those in South Dakota as a denial of equal protection. The statutes had been declared constitutional in 1894 and 1914. The Florida statute contained a provision for double damages and attorneys fees. Two judges dissented. It is uncertain what effect the provision for double damages and attorneys fees had on the decision, but our statute contains no such provision. The limited effect of the Ivey decision was fixed in Loftin v. Crowley's Inc., 150 Fla. 836, 8 So.2d 909, 142 A.L.R. 626, cert. den. 317 U.S. 661, 63 S.Ct. 60, 87 L.Ed. 531, where it was contended that a statutory rule of evi-

dence on a presumption of negligence against railroads and their employees for damages to persons, stock, or other property, was unconstitutional on the same grounds as urged in the Ivey case. The Florida court said:

> "The opinion and judgment in the Ivey case is not controlling here. In that case we were dealing with a statute which imposed penalties on one class of common carrier which were not imposed on another class performing the same service in the same localities. While here we are dealing with one statute, * * * which is merely a statutory rule of evidence. The enactment of such statutes is within the general powers of government."

The Kentucky court in Louisville & Nashville Railroad Co. v. Faulkner, 1957, Ky., 307 S.W.2d 196, had before it a prima facie evidence of negligence statute substantially the same as SDC 37.2302. The Kentucky court citing the Ivey case held this statute unconstitutional with two judges dissenting. The opinion makes no mention of the Loftin case. Reviewing the Loftin case, we find it impossible to consider the Ivey case as precedent for the Faulkner decision.

The case of Fort Worth & D. C. Ry. Co. v. Welch, 1944, Tex. Civ.App., 183 S.W.2d 730, contains an exhaustive discussion of fencing statutes more rigid than the South Dakota statutes and changed transportation conditions since enactment. The Ivey decision is discussed and the Texas court refused to be persuaded and did not hold such statutes unconstitutional.

The most recent case cited is Louisville & Nashville R. Co. v. Stuart, 1960, 270 Ala. 285, 117 So.2d 399. The Alabama court also discusses the Ivey case and ponders the effect of the double damage and attorneys fees provision on the decision in that case. It refused to hold unconstitutional a statute requiring fences with liability on railroads for damages to livestock killed or injured by reason of failure to fence.

We have carefully considered each of the cases mentioned. South Dakota is still geared to a farm and ranch economy. Concentrations of livestock are heavier than they were several decades past. There is much open range country in many sparsely

populated areas crossed by transcontinental railroads on which trains move at great speeds. Reason and safety still require and necessitate classification under legislative police powers between railroads and motor carriers conducting their business on public highways.

We agree with what was said by the Texas and Alabama courts in the cases cited that the classification is reasonable and not arbitrary; that it rests upon real and substantial differences between railroads and motor carriers; that the classification reasonably promotes the public interest and welfare. Two of these statutes were enacted before statehood and the general fencing statute shortly after statehood. The legislature through the years has seen fit to retain these statutes. If changed conditions warrant their repeal, this should be by legislative action and not by judicial decision.

The judgment is affirmed.

All the Judges concur.